IN THE MATTER OF ANTHONY M. LANZA, AN ATTORNEY-
AT-LAW OF NEW JERSEY.

Argued April 8, 1957—Decided May 6, 1957.

For the order:  *Mr. Frederick C. Vonhof.*

For the respondent:  *Mr. William Gelfond.*

The opinion of the court was delivered by

OLIPHANT, J.   The Essex County Ethics and Grievance Committee has presented the respondent for unprofessional conduct and such disciplinary action as the court may deem proper and necessary under the facts and circumstances.

In the presentment the committee found the respondent guilty of unethical and unprofessional conduct:   (a) that he grossly and negligently failed to protect a client's interest with the result that the client's matrimonial action was dismissed for lack of prosecution;   (b) that the respondent's affidavit of inquiry as required by *R. R.* 4:95–1(*a*) contained statements false in fact;   (c) that in answer to his client's inquiries concerning the status of the divorce action he made false answers that were calculated to mislead the client;   and (d) that respondent had done nothing to have the dismissed matrimonial action restored as an active case on the trial calendar.   The committee concluded that the respondent's conduct violated *Canons* 15, 21, 22 and 29.

The following important facts are gleaned from the record. On December 10, 1954 the respondent was retained by the complainant Metz, a resident of this State, to institute a divorce proceeding against his wife, and Metz paid the respondent the sum of $200 as a retainer and on account of his total fee.   On February 7, 1955 the respondent filed a complaint for Metz against his wife for a divorce *a vinculo,* on the ground of desertion, together with an affidavit of residence of the plaintiff as required by *R. R.* 4:95–1(*a*).   No affidavit of inquiry was filed nor was any attempt made to obtain service by publication and substituted service under *R. R.* 4:96–1 to 4:96–5.

It does not appear on the record but I think we can assume that the respondent had information that the defendant would acknowledge service under *R. R.* 4:96–6, because on May 5, 1955 he forwarded a copy of the summons and complaint to the Sheriff of Riverside County, California, and asked him to serve the defendant at the address given in the complaint and have her execute the acknowledgment

of service which had been typed on the back of the copy of the summons accompanying the complaint, and asking that the copy as acknowledged be mailed back together with the affidavit of service.

On May 16, 1955 the Sheriff of Riverside County returned all the papers, stating that "defendant's father, Mr. Devine, stated that Patricia Metz has returned to her husband who is in the Service at Fort Hustus [*sic*] Virginia." The respondent testified below that the plaintiff Metz later in the summer got in touch with him and said his wife was coming here and that he could get her to accept service in New Jersey. At the hearing before the Ethics Committee there was introduced into evidence an acknowledgment of service signed by the defendant Patricia K. Metz, in which she submitted generally to the jurisdiction of the courts of New Jersey. This acknowledgment was dated August 20, 1955 and was not executed in July as the Ethics Committee report indicates, nor was it executed on a Sunday as the respondent testified and as the Ethics Committee found in their presentment.

This acknowledgment could have been, but was never, filed with the clerk of the Superior Court, with the result that on November 9, 1955, on motion of the clerk, a notice of motion was sent to the respondent returnable on December 9, 1955, to dismiss the action for lack of prosecution, and the action was so dismissed. The respondent had not appeared on that date because he claimed he was in Canada on business and had been during this same period and that he did not return until December 10 or 11, at which time the case had been dismissed.

On February 25, 1956 Metz received a letter from the respondent advising him that "due to a clerical error in my office, your case went off the court calendar. I am now having it restored on the calendar and I shall do everything possible to expedite it." Despite repeated telephone calls Metz heard nothing from the respondent, and in September 1956 he left a note at the respondent's office stating he intended to contact the bar association.

On September 20, 1956 he received a letter from respondent stating "through a clerical error your case went off the trial calendar without my knowing about it. I am appearing before the judge on Tuesday morning to have the matter replaced on the calendar. I will advise you in the next week or so how the case stands." On October 11, 1956 Metz reached the respondent by telephone and was advised that a "certificate" of some kind was needed and the necessary certificate was to be mailed to him. However, Metz heard nothing further and in the meanwhile, on November 1, 1956, Metz complained by letter to the Chief Justice and eventually filed a complaint with the Ethics Committee on January 24, 1957. Three days prior to the date of the formal hearing on February 8, 1957 the respondent paid to Metz the $200 which he had received as a retainer.

Respondent has been a member of the Bar of this State since October 1935, and so far as the record discloses there have been no complaints as to his conduct. He admittedly had very limited experience in divorce litigation, since the difficulty he ran into was common in such cases where there is an out-of-state defendant who has to be located and served. There seems to be a common impression, which is not so, that this is the sole responsibility of the lawyer in the case. R. R. 4:96-1, relating to the affidavit of inquiry, requires it be made by the plaintiff or his attorney, but much of the information must be supplied by the client and it is the lawyer's responsibility, through the affidavit of inquiry, to definitely fix the identity of the person to be served as the defendant in the case. In this case Metz supplied the address of the defendant. This address, according to the Sheriff of Riverside County, was a correct address but the defendant no longer resided there, and if the statement made by her father is true and she had returned to her husband, then at that time Metz may not have had a cause of action.

We make these preliminary remarks because delay in the prosecution of a client's cause without more is not necessarily malpractice, although it may result in a reprimand and admonition to the attorney.

In the instant case there was no willful delay in this cause in the preparation of the complaint or the procedure followed up until the time the case was actually dismissed. From that point on counsel seems to have lost his ability to perform his duty or exercise judgment or discretion in the performance thereof, and he had not regained it when he attempted to defend himself in the hearing below.

At the time the complaint was filed the respondent also filed the affidavit of residence of the plaintiff, as required by *R. R.* 4:95–1(*a*), in which affidavit he stated among other things:

> "3. I know he resides at this address, as I have visited him there, made inquiries and have telephoned him and on many occasions sent mail to him at this address and received response."

He now admits his statement that he visited the residence was false and that it was "error" to so state since he had never visited Mr. Metz at the residence stated in the complaint, and that the only time he had sent mail to him was when he sent the divorce complaint for execution and notarization of the affidavit of non-collusion annexed to it.

The fact that this actually was the residence of the plaintiff is of no moment as these statements in the affidavit were intended to lead the court to believe that he had discharged the duties imposed upon him as attorney for the plaintiff, by *R. R.* 4:96–1(*a*), when in fact he had not. Secondly, the statements contained in his letters of February 25, 1956 and September 20, 1956, that the case had gone off the list because of a clerical error, was definitely a half-truth. It was misrepresentation apparently made with the obvious intent to mislead his client as to the real truth of the matter, which was that the case was dismissed for lack of prosecution due to the inattention and neglect of the respondent to appear on the return day of the motion by the clerk to dismiss it. It is quite possible that if he had filed his proof of the acknowledgment of service executed by the defendant, Mrs. Metz, on August 20, 1955, the cause would not have been

dismissed on the clerk's motion for lack of prosecution under *R. R.* 1:30–3. Whether it would have been approved for trial by the standing master under *R. R.* 4:98–1(*c*) is a question we are not called upon to determine.

It is patently unethical for a lawyer to act toward a client otherwise than with the utmost good faith, or to advise a client as to facts which are not and which he knows or does not believe to be correct, and when there is resultant injury affecting the rights of the client then disciplinary action is merited. On the part of the lawyer there should be no breach of that highest trust and confidence which should obtain between him and his client, under which a duty to observe the strictest integrity in his dealings with the client is enjoined.

In the case of *In re Rosenkrans,* 84 *N. J. Eq.* 232 (*Ch.* 1915), one of the elements of fraud upon the client was that on being asked for information as to the status of the cause, the solicitor falsely informed his client that it was pending and being prosecuted with all convenient speed, when in fact no proceeding had been instituted. In that case the respondent was found guilty of fraud upon his client and a suspension of two years was ordered.

In *In re Beery,* 19 *N. J.* 422 (1955), the attorney failed to institute a suit for divorce but told his client such suit had been instituted and was pending trial. Disbarment was ordered.

In *In re Johnson,* 10 *N. J.* 500 (1952), the attorney was disbarred for making false representations to his client as to the status of his suit for divorce which had been dismissed for lack of prosecution after counsel had been paid for his services, which fee was never refunded.

We find a violation of *Canons* 15, 21, 22 and 29, and under all the circumstances of the case are of the opinion that a suspension of the respondent for a period of three months will suffice.

Respondent, therefore, is suspended from the practice of law for a period of three months and until further order of this court. Let an order issue.

VANDERBILT, C. J. (dissenting). The majority opinion makes no reference to the fact that on a complaint sent to me by the respondent's client I wrote the respondent on November 6, 1956, sending him a copy of the client's letter to me and asking for a detailed statement of facts so that I might know how to answer him.

The client's letter read as follows:

"In November of 1954 Mr. Anthony Lanza, Attorney at Law, 1001 Broad St., Newark, agreed to handle a divorce case for me against Mrs. Patricia K. Metz. At the time that Mr. Lanza accepted the case he advised me that it should take no longer than three months to have the case in court. Mrs. Metz was then, and for several months following, in California and quite willing to sign the necessary papers. However, Mr. Lanza apparently did not send them to her. In March 1955 she moved to Virginia, and about in July of that year she came to New Jersey to find out from me exactly what was happening. I immediately contacted Mr. Lanza and he had her sign the necessary papers.

From November of 1954 to July of 1955 I was able to contact Mr. Lanza several times and on each occasion he assured me that he was doing everything possible to have the papers completed. From the time that the papers were signed by Mrs. Metz until February 25, 1956, Mr. Lanza did not contact me once despite countless telephone calls to his office and several to his home.

His message of February 25, 1956 read as follows:

'This is to advise you that due a clerical error in my office, your case went off the court calendar. I am now having it restored and I shall do everything possible to expedite it.'

From February 25, 1956 until September 20, 1956 I received no word from Mr. Lanza again despite repeated telephone calls. A few days prior to the latter date I stopped at his office and left a note advising him that if I was not contacted immediately I would contact the Bar Association. His letter of September 20, 1956 read as follows:

'Through a clerical error your case went off the trial calendar without my knowing about it.

'I am appearing before the judge on Tuesday morning to have the matter replaced on the calendar.

'I will advise you in the next week or so how the case stands.'

On October 11, 1956 I reached Mr. Lanza by telephone and he advised me that he had a certificate of some kind which I had to sign immediately and return to him. He even asked if he could drive out that evening to take care of the matter. However, it was not possible for me to meet him and so he was to mail the certificate to me that same date. From that time to the present I have received no papers to be signed, nor any further word in this matter.

Mr. Lanza agreed to handle the case for me for $325.00. I paid him $200.00 as a retainer at that time.

Two years would seem to be more than sufficient time for such a matter to be settled. The burden of this whole thing and the constant aggravation of trying to get it settled have been extremely upsetting to me. My personal life and health have been jeopardized by it.

I regret having to contact you in this way, but it is as a last resort as I have no idea which course to follow now. Professional ethics would prevent my approaching another attorney.

Can you advise me if there is any way that I can receive some action? Would it be possible for me to have my fee returned and obtain my release so that I may retain another attorney? If Mr. Lanza is too busy to handle this, can't he have someone else take care of it for him? I would prefer that he finish the case, but certainly not at his present pace."

In my letter of November 6, 1956, I stated to the respondent:

"On the facts as stated by him [the client] it would seem that you have very much neglected his case. I hope you have some explanation."

Not receiving any reply I again wrote the respondent on December 12, 1956, referring to my earlier letter and adding:

"Although considerably more than a month has gone by, I do not seem to have any reply from you. I am writing you now to say that unless you reply in detail by Saturday morning, December 15th, I shall have no choice but to send an investigator from the Administrative Office of the Courts to take your statement."

I received no reply from the respondent and then asked the Administrative Director of the Courts to have some one follow up the respondent to see why he had not answered my letters.

The Administrative Director assigned the matter to Mr. Philip G. Miller of his office, who telephoned the respondent, telling him what matter he wished to discuss, and made an appointment to see him on January 3, 1957. When Mr. Miller called on the respondent on the date set, he said that he had intended to bring the file to the office but had forgotten it and left it home. He told Mr. Miller that he had first seen my letter of November 6, 1956 in the first week

of December because he had been in Canada until then. He also said that he had been contemplating answering both my letters, but had not gotten around to it up to the time of Mr. Miller's visit on January 3, 1957. The respondent has never answered my letters.

The client's case was dismissed on December 9, 1955. The respondent told Mr. Miller that he had endeavored to get in touch with Judge Tomasulo to see if the case could be restored or reinstated, but that he had not actually contacted him.

The respondent at this time was running a farm in Canada; prior to that he had been in the building business. His interest in the practice of law is merely incidental to his other activities.

In these circumstances I see no other choice except to vote for disbarment.

*For suspension*—Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and WEINTRAUB—6.

*For disbarment*—Chief Justice VANDERBILT—1.