138 N.J. Super. 233 (1975)
350 A.2d 497
SALVATORE PASSANANTE AND ANGELINA PASSANANTE, PLAINTIFFS-RESPONDENTS,
v.
MILTON YORMARK AND ST. PAUL INSURANCE COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 24, 1975.
Decided December 22, 1975.
*234 Before Judges CARTON, CRAHAY and HANDLER.
Messrs. Willette and Luongo, attorneys for appellants (Mr. Aaron Dines, of counsel and on the brief).
Mr. George F. Handricks, attorney for respondents.
*235 The opinion of the court was delivered by CARTON, P.J.A.D.
This appeal involves a question of coverage under a professional insurance policy for claims against an attorney for negligent performance of his duties.
Late in 1967 or early 1968 plaintiffs Passanante consulted one Borrus, a New Jersey attorney, intending to engage him to handle a medical malpractice claim for them. Borrus, who did not handle such cases, referred the matter to defendant Milton Yormark. The Passanantes visited Yormark, who assured them that he would handle the case. This interview occurred sometime prior to April 30, 1968.
Plaintiffs' medical malpractice claim arose out of an operation performed on Salvatore Passanante at the Overlook Hospital in Summit. Passanante had entered the hospital in July 1967 for a spinal fusion. He claimed that after the operation the nurse improperly applied a brace to his neck. He testified that he had complained to no avail that it was too tight and that he lost consciousness. When he awoke he was paralyzed.
The parties have stipulated that the incident occurred on July 15, 1967, a date of crucial significance since Yormark had at least 15 months after his initial interview with the Passanantes within which to file an action on their behalf before the two-year statute of limitations expired. No such action was filed.
There was, however, some further activity with respect to the claim. According to plaintiff Angelina Passanante, she spoke to Yormark three or four times after the initial interview, but there was no further in-person interview. Angelina Passanante testified that Yormark telephoned her early in 1972, stating that the case was "coming up" in Somerset County and that he would visit their home in "a couple of weeks" to discuss the case. Yormark never showed up.
Borrus related that Yormark had indicated to him in 1970 that suit had been filed in the matter. He had also averred in an affidavit on a motion for summary judgment *236 that he had a conversation with Yormark early in 1969 during which Yormark informed him the suit had already been filed. However, Borrus explained this in his testimony as meaning he thought Yormark was going to file suit, not that he had already done so.
Yormark was disbarred on February 7, 1972, In re Yormark, 60 N.J. 175 (1972); see also, State v. Yormark, 117 N.J. Super. 315 (App. Div. 1971), certif. den. 60 N.J. 138, cert. den. 407 U.S. 925, 92 S Ct 2459, 32 L Ed.2d 812 (1972). In March 1972 Borrus attempted to contact Yormark, but he was unsuccessful in doing so. Finally, he wrote a letter to Yormark seeking a status report or return of the file and mentioning plaintiffs' dissatisfaction with Yormark's failure to communicate with them. No response was received. Yormark has vanished.
Plaintiffs brought the present action against Yormark to recover for his negligence in handling the medical malpractice case entrusted to him. Substituted service was made on defendant St. Paul Insurance Company, Yormark's malpractice insurance carrier. Plaintiffs later filed an amended complaint joining the insurance company as a party defendant and seeking a determination, in the nature of a declaratory judgment, that St. Paul was liable under its professional insurance policy issued to Yormark to pay for damages resulting from Yormark's negligence. The insurance company denied liability on the ground that there was no coverage in force.
The trial judge, sitting without a jury, after conducting a separate trial on the issue, ruled that coverage was afforded to plaintiffs under Yormark's policy and that the insurance carrier was obligated to defend the action on his behalf. The carrier filed the present appeal from the ensuing final judgment.
It is not disputed that the period of coverage afforded to Yormark ceased on June 30, 1969. The insurance company's basic contention is that since Yormark had until July 15, 1969 to institute a medical malpractice action on behalf of *237 the Passanantes against those involved, he could be guilty of no actionable negligence until the expiration of the statute of limitations on July 15, a time when coverage had already ceased.
Resolution of the issue thus raised requires consideration of the pertinent policy provisions as well as the nature of Yormark's duties towards his clients in handling the medical malpractice claim. The insurer agreed to provide coverage for Yormark's "professional liability," with a limit of $500,000 for "Each Occurrence" and a provision for a deductible amount. Under the heading "INSURING AGREEMENTS" the company agreed:
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages arising out of the performance of professional services for others in the Insured's capacity as a lawyer and caused by the Insured or any other person for whose acts the Insured is legally liable * * *. [Emphasis provided]
The policy recites that it
applies * * * to professional services performed for others (a) during the policy period (b) prior to the effective date of the Policy if claim is made or suit is brought during the policy period and providing the Insured, at the effective date of the Policy, had no knowledge or could not have reasonably foreseen any circumstance which might result in a claim or suit. * * *
It provides further that:
1. The limit of liability stated in the Declarations as applicable to "each occurrence" is the limit of the Company's liability for all damages arising out of the same professional services regardless of the number of claims or claimants. If more than one Insured is included in the Policy the limit of liability shall apply separately to each.
The policy also stated, under the caption "EXCLUSIONS," that coverage for professional liability does not apply "(1) to any dishonest, fraudulent, criminal or malicious act or omission of the Insured, any partner or employee * * *."
*238 The professional insurance contract involved in this case should be construed in accordance with the continuing trend of interpreting all insurance policies with the view of ascertaining "the objectively reasonable expectations of applicants and intended beneficiaries." Cf. Bryan Construction Co., Inc. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375 (1972); Westchester Fire Ins. Co. v. Continental Ins. Co., 126 N.J. Super. 29 (App. Div. 1973), aff'd o.b. 65 N.J. 152 (1974).
Here the company's undertaking was to pay all sums the insured became legally obligated to pay as damages "arising out of the performance of professional services" in his capacity as a lawyer and caused by him. The reasonable expectation of the insured and his intended beneficiaries was that they be assured protection against the consequences of any duty which the attorney improperly performed or negligently failed to perform as an attorney for the client during the policy period. Such behavior constitutes an occurrence within the meaning of the policy.
The entire scope of performance of the professional services required by an attorney to be performed in the interest of his client need not be stated. In general, the attorney's duty to his client requires him to exercise the knowledge, skill and ability ordinarily possessed and exercised by members of the legal profession similarly situated. He is bound to exercise a reasonable degree of care and prudence having reference to the character of the service he undertakes to perform. See, e.g., In re Boyle, 18 N.J. 415 (1955); Morris v. Muller, 113 N.J.L. 46 (E. & A. 1934); Frank H. Taylor & Son, Inc. v. Shepard, 136 N.J. Super. 85, 90 (App. Div. 1975); McCullogh v. Sullivan, 102 N.J.L. 381 (E. & A. 1925). His duty includes the obligation of informing his client promptly of any known information important to him. See In re Lanza, 24 N.J. 191, 196 (1957); 7 Am.Jur.2d, Attorneys at Law, § 168 at 146; § 93 at 105.
Moreover, in relation to the specific claim involved here, an attorney is liable for any loss or injury sustained *239 by his client in consequence of a negligent failure to prepare, file and serve pleadings essential to the proper presentation of the client's cause. See 7 Am.Jur.2d, Attorneys at Law, § 170 at 148; Annotation, "Attorney's Liability for Negligence in Preparing or Conducting Litigation," 45 A.L.R.2d 5, 37 (1956). Failure to file suit before the running of the period of the statute of limitations is an obvious illustration of this principle.
In the present case Yormark's responsibility was not simply to file an action within the statutory period. When he undertook to represent plaintiffs he assumed a much broader obligation. That obligation encompassed the taking of any steps reasonably necessary in the proper handling of the case. It included, of course, the duty of investigating the facts, formulating a litigation strategy and filing within a reasonable time any action necessary to effectuate recovery.
But it did not stop there. Reasonable care in the performance of his duties towards his clients dictated that he take ordinary precautions to protect his clients' interest and not delay filing suit until the eleventh hour. He had the implicit obligation to inform his clients of his failure to act (for whatever cause) at a time sufficiently prior to the running of the statute of limitations to permit plaintiffs to engage another attorney who could then take proper action on their behalf. Cf. Jacobs v. Pendel, 98 N.J. Super. 252, 256 (App. Div. 1967); Fessler v. Weiss, 348 Ill. App. 21, 107 N.E.2d 795, 798 (Ct. App. 1952), dealing with an attorney's obligation to notify a client of the attorney's withdrawal from a case sufficiently in advance of the trial date to permit reasonable preparation by substituted counsel.
That Yormark might have been able to rescue himself from complete and certain liability by a last-minute filing of suit should not serve to relieve him from his continuing dilatory conduct. Cf. Wilcox v. Plummer, 4 Pet. 172, 7 L.Ed. 821 (U.S. 1830); see generally, Sullivan v. Stout, 120 N.J.L. 304 (E. & A. 1938); Annotation, "When Statute of Limitations Begins to Run Upon Action Against *240 Attorney for Malpractice," 18 A.L.R.3d 978, § 8[b] at 1005-08 (1968). Nor should it permit the insurance carrier to escape responsibility under its policy because the full measure of damage resulting from such misconduct might not be ascertainable until the statute of limitations ran. Stated another way, the evidence justified a finding there was negligent performance of the attorney's duty occurring during the policy period and which resulted in damage or injury to the client.
Defendant advances the additional argument that Yormark's act in failing to file suit was fraudulent and therefore excluded from coverage under the policy. This argument is devoid of substance for several reasons.
With the exception of Borrus' pretrial affidavit, there appears to be no evidence in the record that Yormark told anyone that he had filed the action before the running of the statute. Moreover, the trial court specifically found that if any fraud was committed it occurred after the running of the statute of limitations on plaintiffs' medical malpractice claim. Thus, even if such conduct may be described as fraud as that term is used in the exclusionary provision of the policy, it was in aid of Yormark's cover-up and was not an essential ingredient of the acts which had already given rise to the claim against him.
As we have already indicated, the gravamen of plaintiffs' complaint was that Yormark was negligent in the handling of the claim entrusted to his care. That he may have coated his negligence with deceit designed to disarm his clients, does not convert that essential claim of negligence to one of fraud. This was the very kind of attorney misconduct which this type of policy was intended to cover.
Affirmed.