215 N.J. Super. 388 (1987)
521 A.2d 1343
URMILA GAUTAM AND NARINDER GAUTAM, PLAINTIFFS-RESPONDENTS,
v.
SAMUEL R. DE LUCA, DEFENDANT-APPELLANT, AND DOMINICK P. CONTE, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 9, 1986.
Decided March 2, 1987.
*390 Before Judges PRESSLER, BAIME and ASHBEY.
Nino F. Falcone, attorney for appellant Samuel R. De Luca (Donald R. Venezia and Nino F. Falcone, on the brief).
Marinari & Farkas, attorneys for respondents Urmila and Narinder Gautam (Robert A. Farkas, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This is an appeal from a judgment of the Superior Court, Law Division, awarding both plaintiffs compensatory and punitive damages based upon the alleged legal malpractice of defendant Samuel De Luca and his associate Dominick Conte. The predicate for plaintiffs' claim was that their former attorneys had negligently represented them in a prior medical malpractice case resulting in the dismissal of their complaint. Plaintiffs made no effort to establish the viability or value of their underlying medical malpractice action. Rather, they sought to *391 recover damages for the mental anguish and emotional distress allegedly caused by the legal malpractice of defendant and Conte. The novel question presented by this appeal is whether damages for emotional distress are recoverable in a legal malpractice action. Auxiliary questions concern whether the evidence was sufficient to support an award of punitive damages.
The salient facts can be recited briefly. Plaintiffs Narinder and Urmila Guatam filed a two-count complaint in which they alleged that defendant and Conte negligently prosecuted their claim for medical malpractice resulting in the dismissal of their complaint. In the first count, plaintiffs alleged that defendant and Conte were "negligent" in failing to exercise the knowledge, skill and ability possessed by members of the legal profession. They claimed that they "suffered injuries and damages" as a "direct and proximate result" of such negligence. In the second count, plaintiffs alleged that defendant and Conte "deliberately or with reckless indifference" failed to advise them of the fact that their medical malpractice claim had been dismissed. Plaintiffs alleged that such conduct warranted punitive damages.
At trial, plaintiffs testified that sometime prior to 1977 they engaged Conte to represent them in unrelated medical malpractice and workers' compensation actions. It is undisputed that Conte was a sole practitioner at this time. However, it is also uncontradicted that Conte joined defendant's law firm in the position of associate shortly thereafter. Conte filed and signed the medical malpractice complaint under defendant's name. Named as defendants were the Jersey City Medical Center, the City of Jersey City and Mrs. Gautam's treating physician.
Protracted discovery proceedings ensued. It is apparent that Conte was extremely dilatory in complying with the court's discovery orders. After lengthy delays and repeated motions, plaintiffs' complaint was ultimately dismissed on this basis on December 6, 1979. Despite plaintiffs' numerous requests for *392 information, Conte never apprised them that their complaint had been dismissed.
In October 1980, plaintiffs received a letter from Conte advising them that he had become ill and could no longer serve as their attorney in the workers' compensation action. Because of the ambiguity of the letter, plaintiffs contacted various court officials and at that time first learned that their complaint in the medical malpractice action had been dismissed. Although Conte cooperated fully with plaintiffs' newly retained attorney, their efforts to have the complaint reinstated proved unavailing.
Both plaintiffs testified that they were greatly distressed by this experience. According to plaintiffs, Conte had told them that their case "had a potential value of $5,000,000." Over vigorous objection, plaintiffs' attorney was permitted to admit into evidence a notice of claim filed with the City of Jersey City demanding the sum of $5,000,000 as damages. Both plaintiffs testified that they developed various psychological problems because of their dashed expectations. Mr. Gautam stated that he suffered constant headaches and back pains and that his marriage began to deteriorate. In similar fashion, Mrs. Gautam testified that she developed insomnia and began experiencing bladder control problems.
Both Conte and defendant testified. According to Conte's testimony, he began to suffer severe disabling headaches shortly after he commenced employment with defendant's firm. Eventually, this condition caused him to leave the office for substantial periods of time. Ultimately, Conte found it necessary to instruct many of his clients to retain other attorneys. According to his testimony, he sent a letter to plaintiffs in June 1980, advising them of his condition and suggesting that they engage another lawyer in the medical malpractice case. He testified that he sent plaintiffs another letter in October 1980 instructing them to retain another attorney in the workers' compensation action. Conte testified that he never received the *393 order dismissing plaintiffs' complaint. When he was apprised of the dismissal, he cooperated fully with plaintiffs' attempt to have the complaint reinstated.
Defendant testified that he was totally unfamiliar with plaintiffs' case. He pointed out that Conte had been retained by plaintiffs prior to his association with his office. Although defendant maintained a "case registry" with appropriate references to all active files, plaintiffs' medical malpractice action had never been listed. With one minor exception, defendant never communicated with the Gautams. It is undisputed that on one occasion defendant answered the telephone and left a message for Conte at plaintiffs' request. Apparently, this was an extremely brief conversation. Plaintiffs' medical malpractice case was not discussed.
Defendant testified that he was aware of Conte's medical problems, but never felt it necessary to review or otherwise supervise his case load. Despite Conte's illness, defendant believed that he was fully able to accord proper attention to his cases. Defendant further testified that he first saw the order dismissing plaintiffs' complaint at the trial.
At the commencement of trial and following the presentation of evidence, both defendant and Conte sought dismissal of plaintiffs' action. Although phrased in a variety of ways, the principal thrust of their argument was that compensatory damages for emotional distress could not be recovered in a legal malpractice case. They contended that where an attorney is guilty of malpractice resulting in the dismissal of his client's complaint, the appropriate measure of damages is the amount of the judgment that could otherwise have been obtained against the primary defendant. Both defendant and Conte asserted that plaintiffs could not prevail in the absence of proof concerning the value of the claim that was lost because of their alleged malpractice. They further argued that punitive damages could not be recovered because plaintiffs failed to establish the underlying cause of action.
*394 We confess to some confusion in our attempt to understand the trial judge's decision. The judge apparently concluded that plaintiffs' claim for emotional distress hinged upon their request for punitive damages. Stated somewhat differently, the judge determined that plaintiffs could recover for their emotional distress and mental anguish if they prevailed upon their claim for punitive damages. The trial judge charged the jury accordingly. Specifically, he instructed the jury to first consider the second count of plaintiffs' complaint in which they sought punitive damages. The judge explained that in the event the jury were to decide that plaintiffs were entitled to punitive damages they were then to determine what compensatory damages were due for emotional distress. No instructions were given concerning the elements of legal malpractice. Nor did the judge instruct the jury concerning the principles of comparative negligence or the concept of proximate cause.
The special interrogatories propounded by the judge were equally confusing. Without any discussion of comparative negligence, the jury was asked to determine separately what compensatory damages were due to each plaintiff from each defendant. Based upon these instructions, the jury returned verdicts in favor of each plaintiff in the amount of $20,000 compensatory damages against each defendant, $20,000 punitive damages against Conte and $15,000 punitive damages against defendant. Only defendant appealed.

I
We reverse. It is axiomatic that "[a]ppropriate and proper charges to a jury are essential to a fair trial." State v. Green, 86 N.J. 281, 287 (1981). See also State v. Collier, 90 N.J. 117, 122 (1982); Talmage v. Davenport, 31 N.J.L. 561, 562 (E. & A. 1864); Gabriel v. Auf Der Heide-Aragona, Inc., 14 N.J. Super. 558, 563-564 (App.Div. 1951). It is "one of the clearest and most important duties of a court to expound the law to the jury, for its guidance and instruction." Talmage v. Davenport, supra, 31 N.J.L. at 562. The court's instructions must correctly *395 state the applicable law in understandable language. Jurman v. Samuel Braen, Inc., 47 N.J. 586, 591-592 (1966). "Entailed is a comprehensible explanation of the questions that the jury must determine...." State v. Green, supra, 86 N.J. at 287. A mandatory duty exists on the part of the trial judge to instruct the jury as to the fundamental principles of law which control the case. State v. Butler, 27 N.J. 560, 595-597 (1958). The faithful performance of this duty is absolutely essential to the value, if not to the very existence of the right to a trial by jury. Talmage v. Davenport, supra, 31 N.J.L. at 562.
Against this backdrop, we find that the trial judge's instructions in this case were materially deficient. Simply stated, the judge utterly failed to apprise the jury of the elements of the cause of action set forth in plaintiffs' complaint. We emphasize that the charge did not in any sense define the nature of the action. As we have noted, the judge merely instructed the jury regarding the standard for recovering punitive damages. In essence, the jury was told to find in plaintiffs' favor if they determined that defendants breached a duty "by an act or omission accompanied by a wanton and willful disregard of the rights of another." The judge stated that if the jury were to find that plaintiffs satisfied this standard and were thus entitled to punitive damages then they were to go on and consider what additional amount would compensate the injured parties for the emotional distress and mental anguish they suffered.
Both defendant and Conte objected vigorously to the trial judge's instructions. In the ensuing colloquy, the judge explained that his instructions were mandated by Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37 (1984). The trial judge's reliance on Nappe was clearly misplaced. In Nappe, our Supreme Court held that "punitive damages could be awarded for egregious conduct in the absence of compensatory damages." Id. at 50. However, we do not read Nappe as creating a new and independent cause of action. Stated somewhat *396 differently, Nappe permits a claimant to recover punitive damages without establishing compensatory damages, but it does not dispense with the requirement of proving a substantive cause of action.
In short, we hold that the trial judge's instructions failed to apprise the jury of the essential elements of plaintiffs' cause of action. The error committed was clearly prejudicial. The jury may have been misled to believe that it had to decide only the issue of damages. See McDonough v. Jorda, 214 N.J. Super. 338, 346-347 (App.Div. 1986). The verdict interrogatories compounded that possibility by omitting any reference to the need to apportion fault between defendant and Conte on a comparative basis. We are thus constrained to reverse.

II
We find no justifiable cause to remand the matter for a retrial. Our thorough review of the record convinces us that the evidence was wholly insufficient to support a recovery of either compensatory or punitive damages.
Legal malpractice suits are traditionally grounded in the tort of negligence. Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 342 (1980); Lamb v. Barbour, 188 N.J.Super 6, 12 (App.Div. 1982), certif. den. 93 N.J. 297 (1983); Hoppe v. Ranzini, 158 N.J. Super. 158, 163-164 (App.Div. 1978); Passanante v. Yormark, 138 N.J. Super. 233, 238-239 (App.Div. 1975), certif. den. 70 N.J. 144 (1976). Although not a guarantor against errors in judgment, Morris v. Muller, 113 N.J.L. 46, 50 (E. & A. 1934), an attorney is required to exercise on his client's behalf the knowledge, skill and ability ordinarily possessed and employed by members of the legal profession similarly situated and to utilize reasonable care and prudence in connection with his responsibilities. Lamb v. Barbour, supra, 188 N.J. Super. at 12. Under this professional standard, an attorney has an obvious duty to timely file and properly prosecute the claims of his client. Hoppe v. Ranzini, supra, 158 N.J. Super. at 163-164; Passanante v. Yormark, supra, 138 N.J. Super. at 238-239. *397 Equally plain is the responsibility of an attorney to inform his client promptly of any information important to him. State v. Pych, 213 N.J. Super. 446, 459 (App.Div. 1986); Passanante v. Yormark, supra, 138 N.J. Super. at 238; RPC 1.1 to RPC 8.5. See also In re Lanza, 24 N.J. 191, 196 (1957). Obviously, this duty encompasses the responsibility to inform a client of the dismissal of his complaint.
The failure of an attorney to abide by these obligations plainly constitutes malpractice at least where there is no reasonable justification shown to support the opposite conclusion. Hoppe v. Ranzini, supra, 158 N.J. Super. at 164; Passanante v. Yormark, supra, 138 N.J.Super, at 238-239. Although our research has disclosed no published opinion bearing on the precise issue, we are equally convinced that an attorney's failure to properly supervise the work of his associate may constitute negligence particularly where, as here, the associate is hindered or disabled by virtue of his illness. We need not dwell upon the subject. Suffice it to say, a reasonable trier of fact could conclude that defendant was guilty of malpractice because he took no action to safeguard the rights of his law firm's clients despite his knowledge of Conte's disabling sickness.
The general rule is that an attorney is responsible for the loss proximately caused the client by his negligence. Hence, the claimant must show by a preponderance of the evidence what injuries he suffered as a proximate consequence of the attorney's breach of duty. Lieberman v. Employers Ins. of Wausau, supra, 84 N.J. at 342. In that context, the measure of damages is ordinarily the amount that the client would have received but for his attorney's negligence. Ibid. See also Hoppe v. Ranzini, supra, 158 N.J. Super. at 164. Such damages are generally shown by introducing evidence establishing the viability and worth of the claim that was irredeemably lost. This procedure has been termed a "suit within a suit." Lieberman v. Employers Ins. of Wausau, supra, 84 N.J. at 342. See also Coggen, "Attorney Negligence *398 ... A Suit Within a Suit," 60 W. Va.L.Rev. 225, 233 (1958); Annotation, "Attorney-Negligence-Damages," 45 A.L.R.2d 62, 63-67 (1956). The principle has been stated as follows:
[P]laintiff has the burden of proving by a preponderance of the evidence that (1) he would have recovered a judgment in the action against the main defendant, (2) the amount of that judgment, and (3) the degree of collectibility of that judgment. [Hoppe v. Ranzini, supra, 158 N.J. Super. at 165.]
Although this rule has been adopted in many jurisdictions, see Winter v. Brown, 365 A.2d 381 (D.C.Ct.App. 1976); McDow v. Dixon, 138 Ga. App. 338, 226 S.E.2d 145 (Ct.App. 1976); Baker v. Beal, 225 N.W.2d 106 (Iowa Sup.Ct. 1975); Christy v. Saliterman, 288 Minn. 144, 179 N.W.2d 288 (Sup.Ct. 1970); Annotation, "Attorney-Negligence-Damages," supra, 45 A.L.R.2d at 63-67, it is subject to criticism on several accounts. First, the rule wholly ignores the possibility of settlement. The simple fact is that many, if not most, legal claims are not tried to conclusion, but rather are amicably adjusted. Second, it is often difficult for the parties to present an accurate evidential reflection or semblance of the original action. Finally, the passage of time itself can be a significant factor militating against the "suit within a suit" approach.
Alluding to several of these factors, our Supreme Court has eschewed rigid application of the "suit within a suit" principle in favor of a more flexible rule. In Lieberman v. Employers Ins. of Wausau, supra, the Court concluded that "it should be within the discretion of the trial judge as to the manner in which the plaintiff may proceed to prove his claim for damages...." Id. at 343. Although the Court declined to "delineate in final detail what alternatives must be considered," it observed that "they include the `suit within a suit' approach or any reasonable modification thereof." Id. at 333-334.
We recognize that the "suit within a suit" rule may well suffer from an undue rigidity. We also readily acknowledge that mental and emotional distress is often "just as `real' as physical pain" and that "its valuation is [sometimes] no more difficult." Berman v. Allan, 80 N.J. 421, 433 (1979). Damages for such distress have been allowed in an increasing *399 number and variety of contexts. See, e.g., Saunderlin v. E.I. DuPont Co., 102 N.J. 402 (1986); Evers v. Dollinger, 95 N.J. 399 (1984); Portee v. Jaffee, 84 N.J. 88 (1980); Berman v. Allan, supra, 80 N.J. at 433; Zahorian v. Russell Fitt Real Estate Agency, 62 N.J. 399 (1973); Falzone v. Busch, 45 N.J. 559 (1965); NPS Corp. v. Insurance Co. of North America, 213 N.J. Super. 547 (App.Div. 1986); Strachan v. John F. Kennedy Memorial Hospital, 209 N.J. Super. 300 (App.Div. 1986); Pushko v. Bd. of Tr. of Teachers' P & A, 202 N.J. Super. 98 (App.Div. 1985), on remand 208 N.J. Super. 141 (App.Div. 1986); State v. Thompson, 199 N.J. Super. 142 (App.Div. 1985); Eyrich for Eyrich v. Dam, 193 N.J. Super. 244 (App.Div. 1984), certif. den. 97 N.J. 583 (1984); State v. Diaz, 188 N.J. Super. 504 (App.Div. 1983); Muniz v. United Hsps. Med. Ctr. Pres. Hsp., 153 N.J. Super. 79 (App.Div. 1977); Lemaldi v. DeTomaso of America, 156 N.J. Super. 441 (Law Div. 1978); Restatement, Torts 2d §§ 313 and 436 (1965).
We are nevertheless persuaded that emotional distress damages should not be awarded in legal malpractice cases at least in the absence of egregious or extraordinary circumstances. Whether viewed within the context of the traditional concept of proximate cause, see People Exp. Airlines, Inc. v. Consolidated Rail, 100 N.J. 246, 252-253 (1985); Robinson v. Gonzalez, 213 N.J. Super. 364, 369 (App.Div. 1986), or simply as a matter of sound public policy, Caputzal v. The Lindsay Co., 48 N.J. 69, 75-78 (1966), we are convinced that damages should be generally limited to recompensing the injured party for his economic loss.
Even if emotional distress damages were recoverable in legal malpractice actions, such awards would be impermissible in the absence of medical evidence establishing substantial bodily injury or severe and demonstrable psychiatric sequelae proximately caused by the tortfeasor's misconduct. As a practical matter, there must be some convenient clamp or restriction placed upon a tortfeasor's otherwise boundless liability. The courts cannot serve as the answer for all of life's shortcomings *400 and disappointments. Aggravation, annoyance and frustration, however real and justified, constitute unfortunate products of daily living. Damages for idiosyncratic psychiatric reactions should not be permitted. Caputzal v. The Lindsay Co., supra, 48 N.J. at 76. Judicial lines must be drawn. Dean Prosser puts it well:
As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequence of any act, upon the basis of some social idea of justice or policy.
This limitation is sometimes, although rather infrequently, one of the fact of causation. More often it is purely one of policy, of our more or less inadequately expressed ideas of what justice demands, or of administrative possibility and convenience, none of which have any connection with questions of causation at all. Prosser, Torts § 41 at 236-237 (4ed. 1971).
Within that conceptual framework, we are fully convinced that there was no warrant for the award of emotional distress damages under the facts of this case. We emphasize that the relationship between the parties was predicated upon economic interest. The loss, if one occurred, was purely pecuniary. While we acknowledge that the outer-most boundaries of the law dealing with emotional distress damages are not yet visible, we are thoroughly satisfied that there is no warrant for allowing recovery under the facts of this case. See Kelly v. Borwegen, 95 N.J. Super. 240, 241 (App.Div. 1967).

III
We also observe that the evidence presented at trial was clearly insufficient to warrant punitive damages against defendant. "The key to the right to punitive damages is the wrongfulness" of the tortfeasor's act. Nappe v. Anschelewitz, Barr, Ansell & Bonello, supra, 97 N.J. at 49. To warrant a punitive award, "the defendant's conduct must have been wantonly reckless or malicious." Ibid. Stated another way, "[t]here must be a `positive element of conscious wrongdoing.'" Berg v. Reaction Motors Div., 37 N.J. 396, 414 (1962), quoting McCormick, Damages § 126 at 280 (1935). See also Di Giovanni v. Pessel, 55 N.J. 188, 191 (1970).
*401 The evidence presented against defendant plainly did not satisfy this standard. The record is totally barren of any evidence which might reasonably support the conclusion that there was a "deliberate act or omission [by defendant] with knowledge of a high degree of probability of harm and reckless indifference to consequences." Berg v. Reaction Motors Div., supra, 37 N.J. at 414. At best, the evidence presented by plaintiffs established that defendant failed to properly supervise Conte's work. Plaintiffs utterly failed to prove that defendant was aware of the dismissal of their medical malpractice complaint. Whatever may be said with respect to the nature and quality of Conte's conduct, the evidence presented at trial did not warrant a recovery of punitive damages against De Luca.

IV
In sum, we are convinced that the trial judge committed prejudicial error in his instructions to the jury and that the evidence did not warrant recovery of either compensatory or punitive damages. Accordingly, the judgment of the Law Division is reversed as to defendant De Luca.