**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5263-17T1

DANIEL MOTLEY,

     Plaintiff-Appellant,

v.

RALPH L. FINELLI,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

STEVEN LISA, and L&B
DEVELOPERS, LLC,

     Third-Party Defendants.
_____

     Argued July 8, 2019 – Decided July 16, 2019

     Before Judges Yannotti and Haas.

     On appeal from the Superior Court of New Jersey, Law
     Division, Essex County, Docket No. L-0834-16.

Kristen Ragon argued the cause for appellant (Goldman Davis Krumholz & Dillon, PC, attorneys; Evan L. Goldman and Kristen Ragon, on the brief).

Lisa M. Leili argued the cause for respondent (Vella, Singer and Associates, PC, attorneys; Lisa M. Leili and David J. Singer, of counsel and on the briefs).

PER CURIAM

Plaintiff Daniel Motley appeals from an order entered by the Law Division on June 8, 2018, which denied his motion for reconsideration of an order dated April 16, 2018, which dismissed his claims against defendant Ralph L. Finelli with prejudice. We affirm.

I.

Plaintiff and his brother are the owners of property in the Borough of Seaside Park (the Borough). The property is located in the Borough's "R-3 zone," which restricts property to single-family uses. The property contained two structures, which were constructed before the R-3 zone restrictions went into effect and qualified as pre-existing, non-conforming uses. In 2008, plaintiff made plans to renovate one of the buildings after a hot water system burst and the structure sustained significant water damage.

Initially, plaintiff planned to add a second story to the building and filed a use variance with the Borough's Zoning Board of Adjustment (Board), seeking

to expand the nonconforming use and certain bulk variances. The Board denied the application. Plaintiff revised his approach and hired defendant, a licensed architect, to design the construction plans. Defendant completed the plans on July 18, 2009.

In August 2009, plaintiff submitted an application for a zoning permit to the Borough's zoning officer, James Mackie, seeking permission to begin construction. On the portion of the application describing the work to be performed, plaintiff wrote, "[r]epair [r]enovation of [e]xisting dwelling" and "replace A/C." He attached defendant's plans to the application.

On August 28, 2009, Mackie approved the application and issued a permit to begin construction. The permit stated there was to be "[n]o expansion of [the structure's] dimensions[.]" The permit also stated, "[s]iding, shingles, additional windows only – no bumpouts." Construction began thereafter.

On January 20, 2010, the Borough's code enforcement officer, Patrick Linkovitch, telephoned plaintiff and informed him "that the construction that is being performed is beyond the scope of [the] zoning permit." Linkovitch asked plaintiff to meet with him at the Borough's zoning office the following day.

On January 21, 2010, plaintiff and his construction manager, Steven Lisa, met with Linkovitch and Mackie. Plaintiff testified that Mackie told plaintiff

"the building went to[o] far and [plaintiff] was going to be issued a stop order." Mackie informed plaintiff that local ordinances prohibited renovations that affect more than fifty percent of an existing structure.

That same day, the Borough issued an order that prohibited any further construction on the property (the stop-work order). The stop-work order stated that the construction on the property exceeded the scope of the construction permit and that plaintiff needed to obtain an "update" to the permit before continuing construction.

Defendant became aware of the stop-work order, and on January 22, 2010, he wrote a letter to the Borough's construction office challenging the order and detailing the scope of his design plans. Defendant stated that he "anticipate[s] the removal of the [s]top [o]rder to be imminent."

On January 31, 2010, defendant wrote a letter to the Borough's zoning office, detailing the construction to date and stating that he "believe[d] all of the work has been carried out with the best interests of the owner and the [B]orough in mind, and with respect to all applicable codes and ordinances in effect at the date of issue." On February 4, 2010, the Borough posted a zoning violation notice on plaintiff's property.

4

Plaintiff challenged the stop-work order in a petition to the Borough's Board of Adjustment (the Board), which thereafter conducted hearings on the petition. At the hearings, defendant stated that the project involved the total renovation of the building's interior and exterior, and the permit application provided for replacement of the roof, frame, and finish, installation of a new floor and staircase, as well as construction of a new upstairs bathroom. Defendant asserted that the renovation plan would not change the existing dimensions of the structure.

Lisa testified that the roof was removed first and as the work progressed, it became clear that the building had more damage than initially known. He stated that while he had hoped to retain as much of the existing walls as possible, the condition of the building did not permit that approach. He also said that many floor beams were rotted, and the main center beam was sagging six to eight inches. According to Lisa, the building inspector decided that the entire structure had to be removed.

Mackie testified that when he reviewed plaintiff's permit application and defendant's construction plans, he believed the plans called only for the construction of new windows, new shingles, and a new roof. Mackie stated that as construction progressed, he realized the construction that plaintiff was

5

undertaking did not comply with the limitations imposed by the permit or with the Borough's zoning laws. Mackie testified that the demolition went beyond what he had anticipated. He stated that "everything was gone and it was all new construction."

Plaintiff testified that the plans that defendant prepared had alerted the Borough to the possibility that he might need to remove the walls. He stated that he had discussed with Mackie the replacement of the floor joists, insulation, and exterior-wall framing. In addition to seeking withdrawal of the stop-work order, plaintiff asked the Board to issue a use variance to allow him to continue the construction.

The Board upheld the stop-work order. The Board noted that under the relevant provision of the Borough's zoning ordinance, a pre-existing nonconforming use may be repaired or maintained, if such repairs or maintenance do not result in the total destruction of the property. The Board found that Mackie had approved repairs and renovations to the existing building, with certain limitations.

The Board stated that although the plans indicated a wooden floor and existing roof frame would be removed and replaced, the plans did not provide for replacement or removal of the building's walls. The Board found that the

demolition and construction undertaken exceeded the zoning approvals which had been granted, and that the creation of additional living space in the structure constituted an impermissible expansion of the preexisting, nonconforming use.

Plaintiff appealed the Board's decision by filing an action in lieu of prerogative writs in the Law Division. The trial court found that the evidence presented to the Board did not demonstrate an "impermissible expansion of the nonconforming use," and that plaintiff's renovations did not alter the dimensions of the structure. The court set aside the stop-work order in part, and allowed plaintiff to resume certain development of the property. The Board appealed from the trial court's judgment.

In a published opinion, this court reversed the part of the trial court's judgment that vacated the stop-work order. Motley v. Borough of Seaside Park Zoning Bd. of Adjustment, 430 N.J. Super. 132, 156 (App. Div. 2013). The court stated that the construction involved more than the partial destruction of the building, and determined that "[a]bsent a variance, plaintiff had no right to restore the nonconforming structure." Id. at 149.

The court also determined that plaintiff had acted improperly by exceeding the limitations of the zoning permit. Id. at 151. The court stated, "Mackie's notations on the permit clearly show that the authorized work was

7

limited in nature." Ibid. The court determined that plaintiff had no legal right to exceed what the zoning officer's permit allowed. Ibid.

Plaintiff thereafter sought review of the court's judgment by filing a petition for certification with the Supreme Court. On September 10, 2013, the Court denied the petition. Motley v. Borough of Seaside Park Zoning Bd. of Adjustment, 215 N.J. 485 (2013). On February 25, 2014, the Board ordered plaintiff to demolish the structure.

On February 4, 2016, plaintiff commenced this action, alleging that he suffered damages as a result of defendant's "negligence and carelessness." He claimed that "[a]s a licensed professional," defendant "knew or should have known that removal of the walls of the front house would violate [the] Borough['s] zoning ordinances," and that defendant "had an obligation to ensure that his proposed [architectural] [p]lans complied with local zoning ordinances."

Plaintiff further alleged defendant "breached the requisite standard of care relating to architectural practice," which caused him "severe damages," including

> the loss of use and enjoyment of the [p]roperty, costs associated with the delay in being able to use, sell, or otherwise dispose of the [p]roperty, diminution in value of the [p]roperty as a result of the loss of the front house and the costs of construction work to the front house which ultimately required removal.

A-5263-17T1

In July 2016, defendant filed an answer, cross-claims, and various affirmative defenses. In March 2017, defendant filed an amended answer, cross-claims and a third-party complaint against Lisa and his construction company, L&B Developers, LLC (L&B). Plaintiff thereafter filed an amended complaint asserting claims against Lisa and L&B. In February 2018, the trial court dismissed all claims against Lisa with prejudice.

On February 8, 2018, defendant filed a motion to dismiss plaintiff's complaint, arguing that plaintiff did not file the claims against him within the time prescribed by N.J.S.A. 2A:14-1. On March 16, 2018, the judge heard oral argument on the motion and thereafter, filed an order, dated April 16, 2018, which granted defendant's motion and dismissed the complaint with prejudice.

The judge found that plaintiff's cause of action accrued on January 21, 2010, when the Borough issued the stop-work order. The judge also found that plaintiff's appeals challenging the order did not toll the running of the statute of limitations. The judge decided that plaintiff's claims against defendant were barred because plaintiff did not file his complaint within six years after the cause of action accrued, as required by N.J.S.A. 2A:14-1.

On May 4, 2018, plaintiff filed a motion for reconsideration of the court's order. In an order dated June 8, 2018, the judge denied plaintiff's motion for

reconsideration. The judge found that plaintiff had not shown that in dismissing the action, he had acted in a palpably incorrect or irrational manner. This appeal followed.

## II.

On appeal, plaintiff first argues that the "discovery rule" applies here and tolled the running of the statute of limitations on his claim. He argues that when the Borough issued the first stop-work order on January 21, 2010, he did not, and could not, appreciate that he had sustained an ascertainable injury that defendant caused. He further argues that defendant contributed to his failure to perceive he had a potential cause of action against defendant.

We note initially that plaintiff has only appealed from the trial court's order of June 8, 2018, which denied his motion for reconsideration. "[R]econsideration is a matter within the sound discretion of the [c]ourt, to be exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). A court should only grant a motion for reconsideration when "either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Fusco

v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (first quoting D'Atria, 242 N.J. Super. at 401; and then citing R. 4:49-2).

Here, the trial court did not mistakenly exercise its discretion by denying plaintiff's motion for reconsideration of the April 16, 2018 order, which dismissed plaintiff's claims against defendant with prejudice. As the court correctly noted, N.J.S.A. 2A:14-1 governs the time in which plaintiff's claims against defendant for professional malpractice must be filed. The statute provides that the action must be filed within six years after the cause of action accrued. Ibid.

A cause of action for professional negligence "accrues" when a defendant's "breach of professional duty proximately causes a plaintiff's damages." Grunwald v. Bronkesh, 131 N.J. 483, 492 (1993) (citing Gautam v. DeLuca, 215 N.J. Super. 388, 397 (App. Div. 1987)). "Accrual of an action is the trigger that commences the statute-of-limitations clock." The Palisades at Fort Lee Condominium Assoc. v. 100 Old Palisade, LLC, 230 N.J. 427, 442 (2017).

However, "[u]nder special circumstances and in the interest of justice," the discovery rule may apply and "postpone the accrual of a cause of action when a plaintiff does not and cannot know the facts that constitute an actionable

claim." Grunwald, 131 N.J. at 492. Under the discovery rule, "the limitations clock does not commence until a plaintiff is able to discover, through the exercise of reasonable diligence, the facts that form the basis for an actionable claim against an identifiable defendant." Palisades, 230 N.J. at 435 (citing Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)).

In his complaint, plaintiff alleges that he retained defendant to prepare the plans for remodeling of one of the houses on his property, which is a nonconforming use in the Borough's R-3 residential zone that previously suffered extensive damage. Plaintiff claims defendant prepared plans, which anticipated "a complete renovation of the" house.

Plaintiff asserts that after the construction began, it was determined that the walls were in "very poor condition and required replacement." Plaintiff notes that the walls were removed and replaced. He also notes that the Borough's code enforcement officer issued a stop-work order after the officer discovered the extent to which plaintiff and his contractors had demolished the front house.

Plaintiff claims that after this court reinstated the stop order, he was left with a partially-renovated house, which he could not complete. He was ordered to tear down what remained of the structure and fill the ground with soil. He

claims defendant knew or should have known that removal of the walls from the house would violate the Borough's zoning ordinance. He alleges that as a licensed professional, defendant had a duty to ensure that the plans complied with the zoning ordinance.

As noted previously, the trial court in this case determined that plaintiff's cause of action against defendant accrued on January 21, 2010, when the Borough issued the first stop-work order. The court decided that, as of that date, plaintiff became aware of facts that would alert a reasonably diligent person of the possibility he had an actionable claim against defendant. The record supports the trial court's determination.

On January 20, 2010, Linkovitch, the Borough's code enforcement officer, informed plaintiff that there was a problem with the construction on the property. On January 21, 2010, plaintiff and his construction supervisor met with Linkovitch and Mackie at the Borough's zoning office. At that meeting, Mackie told plaintiff that the construction at the front house had exceeded the scope of the zoning permit issued for the project and that the Borough's zoning ordinance prohibited renovations that affect more than fifty percent of an existing structure. That day, the Borough issued the stop-work order, which prohibited further construction.

13

Thus, plaintiff knew, as of January 21, 2010, that the Borough officials had determined that construction on his property had exceeded the scope of work allowed by the previously-issued permit. On that date, plaintiff was aware of facts, which would place a person of reasonable diligence on notice that he had a potential claim against defendant for professional negligence in the preparation of the design plans. Plaintiff had sufficient facts to claim that defendant had prepared plans that did not comply with the Borough's zoning ordinance.

Nonetheless, plaintiff argues that on January 21, 2010, he could not appreciate that he had sustained an ascertainable injury due to defendant's alleged professional malpractice. He claims that when the Borough stopped the work on January 21, 2010, the Borough provided an explanation that was "extremely vague." According to plaintiff, the Borough's officials merely stated that the work exceeded the scope permitted by the permit, but the stop-work order did not specify "how or why" this was so.

Plaintiff further argues that in addition to the lack of specificity in the stop-work order, circumstantial evidence shows that a reasonable person in this situation would not have appreciated he may have a cause of action against defendant for professional malpractice. Plaintiff asserts that defendant disputed

the basis for the issuance of the stop-work order, and provided the Borough with additional information regarding the suitability of the foundation and the revised floor construction for the structure.

Plaintiff asserts that defendant later insisted that the decisions regarding the existing building components and his directions regarding the construction were consistent with the Borough's Code and the zoning permit. Plaintiff alleges that defendant encouraged him to challenge the stop-work order. He argues it was reasonable for him to believe that the Borough mistakenly issued the stop-work order and the matter could be "easily rectified." He further argues that the notice of tort claim he filed with the Borough shows that the Borough issued the stop-work order on January 21, 2018 under "vague circumstances."

We are convinced, however, that the circumstances under which the Borough issued the stop-work order, were not "vague." As of January 21, 2010, plaintiff had sufficient information to believe he had suffered damages, and that the damages were attributable to the design plans that defendant had prepared. The Borough's communications on January 20 and 21, 2010, were more than sufficient to make plaintiff aware of "the facts that form the basis for an actionable claim against an identifiable defendant." Palisades, 230 N.J. at 435 (citing Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)).

15

Therefore, the trial court correctly determined that plaintiff's cause of action against defendant accrued on January 21, 2010, and plaintiff failed to file his complaint within the time required by the statute of limitations.

III.

Plaintiff further argues that his administrative and Chancery Division challenges to the stop-work order tolled the running of the statute of limitations. He argues that he did not receive an adverse decision until this court reinstated the order on March 4, 2013. Plaintiff argues that the trial court in this matter erred by relying upon Grunwald. We disagree.

In Grunwald, the plaintiff hired an attorney and his law firm to negotiate an option agreement for the sale of certain property in Atlantic City. Grunwald, 131 N.J. at 488. The plaintiff's attorney prepared the agreement and provided a sales contract to a prospective purchaser. Ibid. The prospective purchaser signed the option agreement and the contract. Ibid.

The attorney advised the plaintiff that the prospective purchaser had executed an enforceable contract to buy the property. Ibid. When the prospective purchaser backed out of the agreement, the plaintiff brought an action for specific performance or, in the alternative, damages. Ibid.

The Chancery Division found the agreement was unenforceable because the prospective purchaser had not intended to purchase the property. Ibid. This court affirmed. Ibid. The plaintiff then filed an action against his attorney for legal malpractice, but it was filed more than six years after the Chancery Division's decision. Ibid. The trial court dismissed the malpractice action as time-barred, finding that under the discovery rule, plaintiff "knew or should have known that he had suffered damages attributable to" his attorney's representation as soon as he became aware of the Chancery Division's decision, which found the contract unenforceable. Id. at 489.

This court reversed the order dismissing the complaint, finding that the statute of limitations did not begin to run until the completion of plaintiff's appeals in the underlying Chancery Division action and plaintiff received a definitive answer as to whether he suffered any damages. Ibid. The court found that "until the appellate process had run its course, plaintiff's damages were merely speculative, because a favorable resolution of the underlying appeal would have extinguished the damages claimed in the legal-malpractice action." Ibid.

The Supreme Court reversed. Id. at 500. The Court stated that the legal uncertainty regarding whether damages actually occurred "does not alter the

time when the underlying injury or harm occurs and becomes cognizable for purposes of triggering the accrual of a cause of action." Id. at 496. The Court reasoned that a contrary holding would "undermine[] the principal consideration behind statutes of limitations: fairness to the defendant." Id. at 496-97. The Court held that the date on which the plaintiff became aware or should have become aware of defendant's "fault" could "occur before or during a judicial resolution of the underlying action." Id. at 497.

The Court also rejected plaintiff's argument that requiring the plaintiff to file a lawsuit against his attorney at a point when it was still uncertain whether he suffered any damages "may result in a malpractice plaintiff advocating inconsistent positions." Id. at 499. The Court stated that this "apparent dilemma" could be managed by "[s]taying the malpractice action pending completion of the appellate process on the underlying claim[.]" Ibid.

Here, plaintiff argues that the facts are distinguishable from the facts underlying the Court's decision in Grunwald. He contends that Grunwald must be read narrowly and that it stands for the proposition that a statute of limitations will accrue through the appellate process only when the plaintiff is appealing an "adverse judgment."

Plaintiff argues that, unlike the situation in Grunwald, he did not initially appeal an "adverse judgment." He points out that he did not receive an "adverse judgment" on his underlying action against the Board until the court reversed the Law Division's order and reinstated the stop-work order halting construction on his property. He points out that the Appellate Division rendered its decision on March 4, 2013, and claims he filed his complaint against defendant well within the time required by the statute of limitations.

We are not persuaded by these arguments. As we have explained, in Grunwald, the Court held that the accrual of a cause of action is not tolled by litigation of the underlying dispute. The Court made clear that determining when a cause of action accrues does not depend on whether the plaintiff receives a final judgment on the underlying cause of action. Id. at 496. In our view, the Court's holding applies even if the plaintiff receives a favorable judgment in a related trial court action, which is later reversed on appeal.

Therefore, under Grunwald, the relevant inquiry is "when the client suffers damage and discovers, or through reasonable diligence should discover, that that damage is attributable to [the defendant]." Id. at 499. For the reasons set forth previously, plaintiff had that information on January 21, 2010, when the Borough issued the first stop-work order. Because plaintiff did not file his

complaint within six years after that date, his claims against defendant are barred by the statute of limitations.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION