726 A.2d 924 (1999)
158 N.J. 51
A., individually and on behalf of minor child, C., Plaintiff,
v.
B., Defendant and Third-Party Plaintiff-Respondent,
v.
Hill Wallack, Attorneys at Law, Third-Party Defendant-Appellant.
Supreme Court of New Jersey.
Submitted April 1, 1999.
Decided April 15, 1999.
John J. Gibbons, Newark, submitted a brief on behalf of third-party defendant-appellant (Gibbons, Del Deo, Dolan, Griffinger & Vecchione, attorneys).
Mark Z. Segal and Neil M. Day, Lawrenceville, submitted a brief on behalf of defendant and third-party plaintiff-respondent (Fox, Rothschild, O'Brien & Frankel, attorneys; Kenneth H. Mack, of counsel).
The opinion of the Court was delivered by POLLOCK, J.
This appeal presents the issue whether a law firm may disclose confidential information of one co-client to another co-client. Specifically, in this paternity action, the mother's former law firm, which contemporaneously represented the father and his wife in planning their estates, seeks to disclose to the wife the existence of the father's illegitimate child.
A law firm, Hill Wallack (described variously as "the law firm" or "the firm"), jointly represented the husband and wife in drafting wills in which they devised their respective *925 estates to each other. The devises created the possibility that the other spouse's issue, whether legitimate or illegitimate, ultimately would acquire the decedent's property.
Unbeknown to Hill Wallack and the wife, the husband recently had fathered an illegitimate child. Before the execution of the wills, the child's mother retained Hill Wallack to institute this paternity action against the husband. Because of a clerical error, the firm's computer check did not reveal the conflict of interest inherent in its representation of the mother against the husband. On learning of the conflict, the firm withdrew from representation of the mother in the paternity action. Now, the firm wishes to disclose to the wife the fact that the husband has an illegitimate child. To prevent Hill Wallack from making that disclosure, the husband joined the firm as a third-party defendant in the paternity action.
In the Family Part, the husband, represented by new counsel, Fox, Rothschild, O'Brien & Frankel ("Fox Rothschild"), requested restraints against Hill Wallack to prevent the firm from disclosing to his wife the existence of the child. The Family Part denied the requested restraints. The Appellate Division reversed and remanded "for the entry of an order imposing preliminary restraints and for further consideration."
Hill Wallack then filed motions in this Court seeking leave to appeal, to present oral argument, and to accelerate the appeal. Pursuant to Rule 2:8-3(a)[1], we grant the motion for leave to appeal, accelerate the appeal, reverse the judgment of the Appellate Division and remand the matter to the Family Part. Hill Wallack's motion for oral argument is denied.

I.
Although the record is both informal and attenuated, the parties agree substantially on the relevant facts. Because the Family Part has sealed the record, we refer to the parties without identifying them by their proper names. So viewed, the record supports the following factual statement.
In October 1997, the husband and wife retained Hill Wallack, a firm of approximately sixty lawyers, to assist them with planning their estates. On the commencement of the joint representation, the husband and wife each signed a letter captioned "Waiver of Conflict of Interest." In explaining the possible conflicts of interest, the letter recited that the effect of a testamentary transfer by one spouse to the other would permit the transferee to dispose of the property as he or she desired. The firm's letter also explained that information provided by one spouse could become available to the other. Although the letter did not contain an express waiver of the confidentiality of any such information, each spouse consented to and waived any conflicts arising from the firm's joint representation.
Unfortunately, the clerk who opened the firm's estate planning file misspelled the clients' surname. The misspelled name was entered in the computer program that the firm uses to discover possible conflicts of interest. The firm then prepared reciprocal wills and related documents with the names of the husband and wife correctly spelled.
In January 1998, before the husband and wife executed the estate planning documents, the mother coincidentally retained Hill Wallack to pursue a paternity claim against the husband. This time, when making its computer search for conflicts of interest, Hill Wallack spelled the husband's name correctly. Accordingly, the computer search did not reveal the existence of the firm's joint representation of the husband and wife. As a result, the estate planning department did *926 not know that the family law department had instituted a paternity action for the mother. Similarly, the family law department did not know that the estate planning department was preparing estate plans for the husband and wife.
A lawyer from the firm's family law department wrote to the husband about the mother's paternity claim. The husband neither objected to the firm's representation of the mother nor alerted the firm to the conflict of interest. Instead, he retained Fox Rothschild to represent him in the paternity action. After initially denying paternity, he agreed to voluntary DNA testing, which revealed that he is the father. Negotiations over child support failed, and the mother instituted the present action.
After the mother filed the paternity action, the husband and wife executed their wills at the Hill Wallack office. The parties agree that in their wills, the husband and wife leave their respective residuary estates to each other. If the other spouse does not survive, the contingent beneficiaries are the testator's issue. The wife's will leaves her residuary estate to her husband, creating the possibility that her property ultimately may pass to his issue. Under N.J.S.A. 3B:1-2;:3-48, the term "issue" includes both legitimate and illegitimate children. When the wife executed her will, therefore, she did not know that the husband's illegitimate child ultimately may inherit her property.
The conflict of interest surfaced when Fox Rothschild, in response to Hill Wallack's request for disclosure of the husband's assets, informed the firm that it already possessed the requested information. Hill Wallack promptly informed the mother that it unknowingly was representing both the husband and the wife in an unrelated matter.
Hill Wallack immediately withdrew from representing the mother in the paternity action. It also instructed the estate planning department not to disclose any information about the husband's assets to the member of the firm who had been representing the mother. The firm then wrote to the husband stating that it believed it had an ethical obligation to disclose to the wife the existence, but not the identity, of his illegitimate child. Additionally, the firm stated that it was obligated to inform the wife "that her current estate plan may devise a portion of her assets through her spouse to that child." The firm suggested that the husband so inform his wife and stated that if he did not do so, it would. Because of the restraints imposed by the Appellate Division, however, the firm has not disclosed the information to the wife.

II.
This appeal concerns the conflict between two fundamental obligations of lawyers: the duty of confidentiality, Rules of Professional Conduct (RPC) 1.6(a), and the duty to inform clients of material facts, RPC 1.4(b). The conflict arises from a law firm's joint representation of two clients whose interests initially were, but no longer are, compatible.
Crucial to the attorney-client relationship is the attorney's obligation not to reveal confidential information learned in the course of representation. Thus, RPC 1.6(a) states that "[a] lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation." Generally, "the principle of attorney-client confidentiality imposes a sacred trust on the attorney not to disclose the client's confidential communication." State v. Land, 73 N.J. 24, 30, 372 A.2d 297 (1977).
A lawyer's obligation to communicate to one client all information needed to make an informed decision qualifies the firm's duty to maintain the confidentiality of a co-client's information. RPC 1.4(b), which reflects a lawyer's duty to keep clients informed, requires that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." See also Gautam v. De Luca, 215 N.J.Super. 388, 397, 521 A.2d 1343 (App.Div.1987) (stating that attorney has continuing duty "to inform his client promptly of any information important to him"); Passanante v. Yormark, 138 N.J.Super. 233, 238, 350 A.2d 497 (App.Div. 1975) ("[An attorney's] duty includes the obligation *927 of informing his client promptly of any known information important to him."). In limited situations, moreover, an attorney is permitted or required to disclose confidential information. Hill Wallack argues that RPC 1.6 mandates, or at least permits, the firm to disclose to the wife the existence of the husband's illegitimate child. RPC 1.6(b) requires that a lawyer disclose "information relating to representation of a client" to the proper authorities if the lawyer "reasonably believes" that such disclosure is necessary to prevent the client "from committing a criminal, illegal or fraudulent act that the lawyer reasonably believes is likely to result in death or substantial bodily harm or substantial injury to the financial interest or property of another." RPC 1.6(b)(1). Despite Hill Wallack's claim that RPC 1.6(b) applies, the facts do not justify mandatory disclosure. The possible inheritance of the wife's estate by the husband's illegitimate child is too remote to constitute "substantial injury to the financial interest or property of another" within the meaning of RPC 1.6(b).
By comparison, in limited circumstances RPC 1.6(c) permits a lawyer to disclose a confidential communication. RPC 1.6(c) permits, but does not require, a lawyer to reveal confidential information to the extent the lawyer reasonably believes necessary "to rectify the consequences of a client's criminal, illegal or fraudulent act in furtherance of which the lawyer's services had been used." RPC 1.6(c)(1). Although RPC 1.6(c) does not define a "fraudulent act," the term takes on meaning from our construction of the word "fraud," found in the analogous "crime or fraud" exception to the attorney-client privilege. See N.J.R.E. 504(2)(a) (excepting from attorney-client privilege "a communication in the course of legal service sought or obtained in the aid of the commission of a crime or fraud"); Kevin H. Michels, New Jersey Attorney Ethics § 15:3-3 at 280 (1998) ("While the RPCs no longer incorporate the attorney-client privilege into the definition of confidential information, prior constructions of the fraud exception may be relevant in interpreting the exceptions to confidentiality contained in RPC 1.6(b) and (c) ....") (internal citation omitted). When construing the "crime or fraud" exception to the attorney-client privilege, "our courts have generally given the term `fraud' an expansive reading." Fellerman v. Bradley, 99 N.J. 493, 503-04, 493 A.2d 1239 (1985).
We likewise construe broadly the term "fraudulent act" within the meaning of RPC 1.6(c). So construed, the husband's deliberate omission of the existence of his illegitimate child constitutes a fraud on his wife. When discussing their respective estates with the firm, the husband and wife reasonably could expect that each would disclose information material to the distribution of their estates, including the existence of children who are contingent residuary beneficiaries. The husband breached that duty. Under the reciprocal wills, the existence of the husband's illegitimate child could affect the distribution of the wife's estate, if she predeceased him. Additionally, the husband's child support payments and other financial responsibilities owed to the illegitimate child could deplete that part of his estate that otherwise would pass to his wife.
From another perspective, it would be "fundamentally unfair" for the husband to reap the "joint planning advantages of access to information and certainty of outcome," while denying those same advantages to his wife. Teresa S. Collett, Disclosure, Discretion, or Deception: The Estate Planner's Ethical Dilemma from a Unilateral Confidence, 28 Real Prop. Prob. Tr. J. 683, 743 (1994). In effect, the husband has used the law firm's services to defraud his wife in the preparation of her estate.
The New Jersey RPCs are based substantially on the American Bar Association Model Rules of Professional Conduct ("the Model Rules "). RPC 1.6, however, exceeds the Model Rules in authorizing the disclosure of confidential information. A brief review of the history of the Model Rules and of RPC 1.6 confirms New Jersey's more expansive commitment to the disclosure of confidential client information.
In 1977, the American Bar Association appointed a Commission on Evaluation of Professional Standards, chaired by the late Robert J. Kutak. The Commission, generally known as the "Kutak Commission," originally *928 proposed a rule that permitted a lawyer to disclose confidential information in circumstances comparable to those permitted by RPC 1.6. The House of Delegates of the American Bar Association, however, rejected the Kutak Commission's recommendation. As adopted by the American Bar Association, Model Rule 1.6(b) permits a lawyer to reveal confidential information only "to the extent the lawyer reasonably believes necessary to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm." Unlike RPC 1.6, Model Rule 1.6 does not except information relating to the commission of a fraudulent act or that relating to a client's act that is likely to result in substantial financial injury. In no situation, moreover, does Model Rule 1.6 require disclosure. Thus, the Model Rules provide for narrower disclosure than that authorized by RPC 1.6.
In 1982, this Court appointed a committee to consider the Model Rules. The committee, chaired by the Honorable Dickinson R. Debevoise, became known as the "Debevoise Committee." It determined that the original provisions proposed by the Kutak Commission more closely reflected the existing ethics rules in New Jersey. Thus, the Committee concluded that Model Rule 1.6 would "narrow radically the circumstances in which New Jersey attorneys either may or must disclose the information of their clients' criminal or fraudulent behavior." Report of the New Jersey Supreme Court Committee on the Model Rules of Professional Conduct (1983), reprinted in Michels, supra, Appendix D at 1043. When adopting the RPCs, this Court substantially followed the recommendation of the Debevoise Committee. Described as an "openly-radical experiment," Geoffrey C. Hazard, Jr. & W. William Hodes, 2 The Law of Lawyering § AP4:104 (1998), RPC 1.6 "contained the most far-reaching disclosure requirements of any attorney code of conduct in the country," Leslie C. Levin, Testing the Radical Experiment: A Study of Lawyer Response to Clients Who Intend to Harm Others, 47 Rutgers L.Rev. 81, 92 (1994).
Under RPC 1.6, the facts support disclosure to the wife. The law firm did not learn of the husband's illegitimate child in a confidential communication from him. Indeed, he concealed that information from both his wife and the firm. The law firm learned about the husband's child through its representation of the mother in her paternity action against the husband. Accordingly, the husband's expectation of nondisclosure of the information may be less than if he had communicated the information to the firm in confidence.
In addition, the husband and wife signed letters captioned "Waiver of Conflict of Interest." These letters acknowledge that information provided by one client could become available to the other. The letters, however, stop short of explicitly authorizing the firm to disclose one spouse's confidential information to the other. Even in the absence of any such explicit authorization, the spirit of the letters supports the firm's decision to disclose to the wife the existence of the husband's illegitimate child.
Neither our research nor that of counsel has revealed a dispositive judicial decision from this or any other jurisdiction on the issue of disclosure of confidential information about one client to a co-client. Persuasive secondary authority, however, supports the conclusion that the firm may disclose to the wife the existence of the husband's child.
The forthcoming Restatement (Third) of The Law Governing Lawyers § 112 comment I (Proposed Final Draft No. 1, 1996) ("the Restatement") suggests, for example, that if the attorney and the co-clients have reached a prior, explicit agreement concerning the sharing of confidential information, that agreement controls whether the attorney should disclose the confidential information of one co-client to another. Ibid. ("Co-clients... may explicitly agree to share information" and "can also explicitly agree that the lawyer is not to share certain information ... with one or more other co-clients. A lawyer must honor such agreements."); see also Report of the ABA Special Study Committee on Professional Responsibility: Comments and Recommendations on the Lawyer's Duties in Representing Husband and Wife, 28 Real *929 Prop. Prob. Tr. J. 765, 787 (1994) ("Although legally and ethically there is no need for a prior discussion and agreement with the couple about the mode of representation, discussion and agreement are the better practice. The agreement may cover ... the duty to keep or disclose confidences."); American College of Trust and Estate Counsel, ACTEC Commentaries on the Model Rules of Professional Conduct 65-66 (2d ed. 1995) ("When the lawyer is first consulted by the multiple potential clients the lawyer should review with them the terms upon which the lawyer will undertake the representation, including the extent to which information will be shared among them.").
As the preceding authorities suggest, an attorney, on commencing joint representation of co-clients, should agree explicitly with the clients on the sharing of confidential information. In such a "disclosure agreement," the co-clients can agree that any confidential information concerning one co-client, whether obtained from a co-client himself or herself or from another source, will be shared with the other co-client. Similarly, the co-clients can agree that unilateral confidences or other confidential information will be kept confidential by the attorney. Such a prior agreement will clarify the expectations of the clients and the lawyer and diminish the need for future litigation.
In the absence of an agreement to share confidential information with co-clients, the Restatement reposes the resolution of the lawyer's competing duties within the lawyer's discretion:
[T]he lawyer, after consideration of all relevant circumstances, has the ... discretion to inform the affected co-client of the specific communication if, in the lawyer's reasonable judgment, the immediacy and magnitude of the risk to the affected coclient outweigh the interest of the communicating client in continued secrecy.
[Restatement (Third) of The Law Governing Lawyers, supra, § 112 comment l.]
Additionally, the Restatement advises that the lawyer, when withdrawing from representation of the co-clients, may inform the affected co-client that the attorney has learned of information adversely affecting that client's interests that the communicating co-client refuses to permit the lawyer to disclose. Ibid.
In the context of estate planning, the Restatement also suggests that a lawyer's disclosure of confidential information communicated by one spouse is appropriate only if the other spouse's failure to learn of the information would be materially detrimental to that other spouse or frustrate the spouse's intended testamentary arrangement. Id. § 112 comment l, illustrations 2, 3. The Restatement provides two analogous illustrations in which a lawyer has been jointly retained by a husband and wife to prepare reciprocal wills. The first illustration states:
Lawyer has been retained by Husband and Wife to prepare wills pursuant to an arrangement under which each spouse agrees to leave most of their property to the other. Shortly after the wills are executed, Husband (unknown to Wife) asks Lawyer to prepare an inter vivos trust for an illegitimate child whose existence Husband has kept secret from Wife for many years and about whom Husband had not previously informed Lawyer. Husband states that Wife would be distraught at learning of Husband's infidelity and of Husband's years of silence and that disclosure of the information could destroy their marriage. Husband directs Lawyer not to inform Wife. The inter vivos trust that Husband proposes to create would not materially affect Wife's own estate plan or her expected receipt of property under Husband's will, because Husband proposes to use property designated in Husband's will for a personally favored charity. In view of the lack of material effect on Wife, Lawyer may assist Husband to establish and fund the inter vivos trust and refrain from disclosing Husband's information to Wife.

[Id. § 112 comment l, illustration 2.]
In authorizing non-disclosure, the Restatement explains that an attorney should refrain from disclosing the existence of the illegitimate child to the wife because the trust *930 "would not materially affect Wife's own estate plan or her expected receipt of property under Husband's will." Ibid.
The other illustration states:
Same facts as [the prior Illustration], except that Husband's proposed inter vivos trust would significantly deplete Husband's estate, to Wife's material detriment and in frustration of the Spouses' intended testamentary arrangements. If Husband will neither inform Wife nor permit Lawyer to do so, Lawyer must withdraw from representing both Husband and Wife. In the light of all relevant circumstances, Lawyer may exercise discretion whether to inform Wife either that circumstances, which Lawyer has been asked not to reveal, indicate that she should revoke her recent will or to inform Wife of some or all the details of the information that Husband has recently provided so that Wife may protect her interests. Alternatively, Lawyer may inform Wife only that Lawyer is withdrawing because Husband will not permit disclosure of information that Lawyer has learned from Husband.

[Id. § 112 comment l, illustration 3.]
Because the money placed in the trust would be deducted from the portion of the husband's estate left to his wife, the Restatement concludes that the lawyer may exercise discretion to inform the wife of the husband's plans. Ibid.
An earlier draft of the Restatement described the attorney's obligation to disclose the confidential information to the co-client as mandatory. Id. (Council Draft No. 11, 1995); cf. Collett, supra, at 743 (arguing that nature of joint representation of husband and wife supports mandatory disclosure rule). When reviewing the draft, however, the governing body of the American Law Institute, the Council, modified the obligation to leave disclosure within the attorney's discretion.
Similarly, the American College of Trust and Estate Counsel (ACTEC) also favors a discretionary rule. It recommends that the "lawyer should have a reasonable degree of discretion in determining how to respond to any particular case." American College of Trust and Estate Counsel, supra, at 68. The ACTEC suggests that the lawyer first attempt to convince the client to inform the co-client. Ibid. When urging the client to disclose the information, the lawyer should remind the client of the implicit understanding that all information will be shared by both clients. The lawyer also should explain to the client the potential legal consequences of non-disclosure, including invalidation of the wills. Ibid. Furthermore, the lawyer may mention that failure to communicate the information could subject the lawyer to a malpractice claim or disciplinary action. Ibid.
The ACTEC reasons that if unsuccessful in persuading the client to disclose the information, the lawyer should consider several factors in deciding whether to reveal the confidential information to the co-client, including: (1) duties of impartiality and loyalty to the clients; (2) any express or implied agreement among the lawyer and the joint clients that information communicated by either client to the lawyer regarding the subject of the representation would be shared with the other client; (3) the reasonable expectations of the clients; and (4) the nature of the confidence and the harm that may result if the confidence is, or is not, disclosed. Id. at 68-69.
The Section of Real Property, Probate and Trust Law of the American Bar Association, in a report prepared by its Special Study Committee on Professional Responsibility, reached a similar conclusion:
Faced with any adverse confidence, the lawyer must act as a fiduciary toward joint clients. The lawyer must balance the potential for material harm to the confiding spouse caused by disclosure against the potential for material harm to the other spouse caused by a failure to disclose.
[Report of the Special Study Committee on Professional Responsibility: Comments and Recommendations on the Lawyer's Duties in Representing Husband and Wife, supra, 28 Real Prop. Prob. Tr. J. at 787.]
The report stresses that the resolution of the balancing test should center on the expectations of the clients. Id. at 784. In general, "the available ruling authority ... *931 points toward the conclusion that a lawyer is not required to disclose an adverse confidence to the other spouse." Id. at 788. At the same time, the report acknowledges, as did the Restatement, that the available ruling authority is "scant and offers little analytical guidance." Id. at 788 n. 27.
The Professional Ethics Committees of New York and Florida, however, have concluded that disclosure to a co-client is prohibited. New York State Bar Ass'n Comm. on Professional Ethics, Op. 555 (1984); Florida State Bar Ass'n Comm. on Professional Ethics, Op. 95-4 (1997).
The New York opinion addressed the following situation:
A and B formed a partnership and employed Lawyer L to represent them in connection with the partnership affairs. Subsequently, B, in a conversation with Lawyer L, advised Lawyer L that he was actively breaching the partnership agreement. B preceded this statement to Lawyer L with the statement that he proposed to tell Lawyer L something "in confidence." Lawyer L did not respond to that statement and did not understand that B intended to make a statement that would be of importance to A but that was to be kept confidential from A. Lawyer L had not, prior thereto, advised A or B that he could not receive from one communications regarding the subject of the joint representation that would be confidential from the other. B has subsequently declined to tell A what he has told Lawyer L.
[New York State Bar Ass'n Comm. on Professional Ethics, Op. 555, supra.]
In that situation, the New York Ethics Committee concluded that the lawyer may not disclose to the co-client the communicating client's statement. The Committee based its conclusion on the absence of prior consent by the clients to the sharing of all confidential communications and the fact that the client "specifically in advance designated his communication as confidential, and the lawyer did not demur." Ibid.
The Florida Ethics Committee addressed a similar situation:
Lawyer has represented Husband and Wife for many years in a range of personal matters, including estate planning. Husband and Wife have substantial individual assets, and they also own substantial jointly-held property. Recently, Lawyer prepared new updated wills that Husband and Wife signed. Like their previous wills, their new wills primarily benefit the survivor of them for his or her life, with beneficial disposition at the death of the survivor being made equally to their children.

* * *
Several months after the execution of the new wills, Husband confers separately with Lawyer. Husband reveals to Lawyer that he has just executed a codicil (prepared by another law firm) that makes substantial beneficial disposition to a woman with whom Husband has been having an extramarital relationship.
[Florida State Bar Ass'n Comm. on Professional Ethics, Op. 95-4, supra.]
Reasoning that the lawyer's duty of confidentiality takes precedence over the duty to communicate all relevant information to a client, the Florida Ethics Committee concluded that the lawyer did not have discretion to reveal the information. In support of that conclusion, the Florida committee reasoned that joint clients do not necessarily expect that everything relating to the joint representation communicated by one co-client will be shared with the other co-client.
In several material respects, however, the present appeal differs from the hypothetical cases considered by the New York and Florida committees. Most significantly, the New York and Florida disciplinary rules, unlike RPC 1.6, do not except disclosure needed "to rectify the consequences of a client's ... fraudulent act in the furtherance of which the lawyer's services had been used." RPC 1.6(c). But see New York Code of Professional Responsibility DR 4-101; Florida Rules of Professional Conduct 4-1.6. Second, Hill Wallack learned of the husband's paternity from a third party, not from the husband himself. Thus, the husband did not communicate anything to the law firm with the expectation that the communication would be *932 kept confidential. Finally, the husband and wife, unlike the co-clients considered by the New York and Florida Committees, signed an agreement suggesting their intent to share all information with each other.
Because Hill Wallack wishes to make the disclosure, we need not reach the issue whether the lawyer's obligation to disclose is discretionary or mandatory. In conclusion, Hill Wallack may inform the wife of the existence of the husband's illegitimate child.
Finally, authorizing the disclosure of the existence, but not the identity, of the child will not contravene N.J.S.A. 9:17-42, which provides:
All papers and records and any information pertaining to an action or proceeding held under [the New Jersey Parentage Act] which may reveal the identity of any party in an action, other than the final judgment or the birth certificate, whether part of the permanent record of the court or of a file with the State registrar of vital statistics or elsewhere, are confidential and are subject to inspection only upon consent of the court and all parties to the action who are still living, or in exceptional cases only upon an order of the court for compelling reason clearly and convincingly shown.
The law firm learned of the husband's paternity of the child through the mother's disclosure before the institution of the paternity suit. It does not seek to disclose the identity of the mother or the child. Given the wife's need for the information and the law firm's right to disclose it, the disclosure of the child's existence to the wife constitutes an exceptional case with "compelling reason clearly and convincingly shown."
The judgment of the Appellate Division is reversed and the matter is remanded to the Family Part.
For reversal and remandmentChief Justice PORITZ and Justices HANDLER, POLLOCK, GARIBALDI, STEIN, and COLEMAN6.
Opposednone.
NOTES
[1] Rule 2:8-3 provides:

Motion for Summary Disposition
(a) Supreme Court. On an appeal taken to the Supreme Court as of right from a judgment of the Appellate Division, any party may move at any time following the service of the notice of appeal for a summary disposition of the appeal. Such motion shall be determined on the motion papers and on the briefs and record filed with the Appellate Division and may result in an affirmance, reversal or modification. The pendency of such motion shall toll the time for the filing of briefs and appendices on the appeal. The Supreme Court may summarily dispose of any appeal on its own motion at any time, and on such prior notice, if any, to the parties as the Supreme Court directs.