**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1335-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

SERGIO DEROSA,

    Defendant-Appellant.

_____

Submitted June 3, 2025 – Decided August 1, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 16-09-2118.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Mark Zavotsky, Designated Counsel, on the brief).

William E. Reynolds, Atlantic County Prosecutor, attorney for respondent (Matthew T. Mills, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Sergio DeRosa was found guilty by a jury of first-degree murder for shooting his wife, Lynn DeRosa, in their home and was sentenced to the mandatory minimum thirty-year parole ineligibility term.  Defendant had initially been charged with reckless manslaughter, but the indictment was superseded about a year later when the State, based upon further investigation, elevated the charge to first-degree murder.  The jury rejected defendant's defense that the shooting was accidental; he claimed he was cleaning his rifle under his wife's guidance when it mistakenly fired.  His conviction was affirmed on appeal.  State v. DeRosa, No. A-1350-17 (App. Div. Oct. 29, 2020) (slip op. at 2), certif. denied 245 N.J. 360 (2021).[1]

Defendant filed a self-represented PCR petition, which, on January 23, 2023, the PCR judge "dismissed without prejudice, preserving the original filing date for six months, due to the [defendant's] failure to file a timely brief." Defendant filed a timely second PCR petition and brief claiming trial counsel was ineffective for failing to:  (1) present a legal expert regarding equitable distribution and alimony in the event defendant and his wife divorced or ask for a jury instruction on divorce distribution law; (2) object during the State's

---

[1]  Defendant did not appeal his sentence.

summations concerning defendant's motive to murder his wife; and (3) interview defendant's son and daughter-in law who testified on behalf of the State that his parents had marital and financial problems and was not prepared to confront these claims. A different PCR judge entered an order denying defendant relief, explaining his reasons in a seventeen-page written decision.

Defendant appeals, arguing:

> POINT I
>
> DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL'S INADEQUATE REPRESENTATION AND PREPARATION DURING BOTH THE PLEA AND TRIAL STAGES OF HIS CRIMINAL PROCEEDINGS.
>
> A. APPLICABLE LAW.
>
> B. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL'S FAILURE TO ATTEMPT TO NEGOTIATE A PLEA OFFER TO THE ORIGINAL CHARGE OF [RECKLESS[2]] MANSLAUGHTER.
>
> C. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO PRESENT EXPERT TESTIMONY TO

---

[2] Defendant's merits brief interchangeably uses the terms "aggravated" and "reckless." Because defendant was charged with "reckless manslaughter," we only use this term.

3                                                                    A-1335-23

REFUTE THE PROSECUTOR'S CLAIM HE WAS FINANCIALLY MOTIVATED TO MURDER HIS WIFE.

D. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL'S FAILURE TO OBJECT TO PREJUDICIAL COMMENTS DURING THE PROSECUTOR'S CLOSING WHICH WERE NOT SUPPORTED BY THE RECORD AND WERE USED TO ESTABLISH MOTIVE FOR THE CRIME.

E. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHO FAILED TO CONDUCT PRETRIAL INTERVIEWS OF HIS SON AND DAUGHTER-IN-LAW WHO SURPRISED COUNSEL AT TRIAL WHEN THEY OFFERED A MOTIVE FOR FIRST-DEGREE MURDER.

After reviewing the record in view of the parties' arguments and governing legal principles, we affirm the PCR judge's order denying relief based upon trial counsel's failure to present expert testimony, object to the prosecutor's summation comments, and conduct pretrial interviews of defendant's son and daughter-in-law. However, we reverse and remand for an evidentiary hearing to determine whether trial counsel was ineffective for not negotiating a plea to reckless manslaughter.

A-1335-23

I

To resolve the issues raised in this appeal, we need not discuss at length the trial proceedings, which are detailed in our fifty-eight-page unpublished opinion affirming defendant's conviction. See DeRosa. We instead summarize the proceedings along with the PCR judge's rulings that relate to defendant's arguments. Before we address these arguments, we set forth the principles that guide our analysis.

To establish a prima facie claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting Strickland). The mere raising of PCR does not entitle the defendant to an evidentiary hearing, State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999), because the court reviewing claims of ineffective assistance has the discretion to grant an evidentiary hearing only if the defendant makes a prima facie showing in support of the requested relief, State v. Preciose, 129 N.J. 451, 462-63 (1992). An evidentiary hearing should only be conducted if there are disputed issues as to material facts regarding entitlement to PCR that cannot be resolved based on the existing record. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).

A-1335-23

We review a PCR judge's legal conclusions de novo. State v. Harris, 181 N.J. 391, 419 (2004). "Where . . . the PCR [judge] has not conducted an evidentiary hearing, we review [their] legal and factual determinations de novo." State v. Aburoumi, 464 N.J. Super. 326, 338 (2020).

II

Defendant contends trial counsel neglected to present expert testimony to challenge the State's theory that defendant murdered his wife because he feared she would divorce him, leaving him destitute. He asserts a marital law expert would have shown that a divorce would have not have financially ruined him. Defendant's claim that such an expert would have aided his defense is misguided.

To provide expert testimony, a party must satisfy N.J.R.E. 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Thus, expert testimony is only needed where: "(1) the intended testimony must concern a subject matter that is beyond the ken of the average juror; (2) the field testified to must be at a state of the art such that an expert's testimony could be

6

sufficiently reliable; and (3) the witness must have sufficient expertise." Hisenaj v. Kuehner, 194 N.J. 6, 15 (2008). Yet, an "expert[] may not intrude on the province of the jury by offering, in the guise of opinions, views on the meaning of facts that the jury is fully able to sort out without expert assistance." State v. Sowell, 213 N.J. 89, 102 (2013) (quoting State v. McLean, 205 N.J. 438, 461 (2011)).

We agree with the PCR judge that trial counsel was not ineffective for failing to proffer marital expert testimony regarding the law of equitable distribution and alimony, as well as failing to ask for a jury instruction on these legal principles, because the issues are irrelevant to a legitimate defense strategy and such testimony would be confusing.

The State's motive theory that defendant killed his wife to avoid being shut out from getting any assets from her — their house and the bank accounts were in her name — if they divorced comes directly from defendant's statement that his brother "just got divorced" and was taken for "half a million dollars." Rather, considering defendant's gambling debt, his limited monthly social security income, Lynn's spendthrift ways and shared hobbies with another man, the State theorized in summation defendant's thinking: "There's no way he's getting divorced. There's no way she's taking his money and bringing it to

another man. . . . So[,] on April 26, 2014, I'm going to kill my wife." However, contrary to defendant's contention, the State never presented any evidence that defendant killed his wife based on his knowledge of our state's divorce law. The State merely cited defendant's self-expressed fear of being in the same boat as his brother.

Testimony by a defense marital expert would not have been admissible because it would not help the jury "understand the evidence or determine a fact in issue." N.J.R.E. 702. The issue before the jury was whether defendant killed his wife in order to maintain his lifestyle given his fear that his wife would leave him. We agree with the State that an expert cannot answer the factual question of whether defendant was concerned—even incorrectly—that a divorce would substantially affect his financial security. Additionally, the State's theory of motive rests on what defendant believed about the consequences of a divorce at the time of the homicide, not on what an expert opines as to the financial consequences of divorce. The jury could decide the issue without an explanation of our divorce law regarding distribution of marital assets.

## III

Defendant argues trial counsel failed to object to the State's summation remarks, which, defendant contends, were without a basis in fact, law, or

8

evidence, that he intentionally killed Lynn while she was sleeping because he believed she wanted a divorce which would leave him financially destitute. Defendant maintains trial counsel's objection during the motion for a new trial failed to challenge the State's inference that Lynn was sleeping when she was shot which called for a new trial because counsel's ineffectiveness affected the jury's verdict. He asserts "the prosecutor's misconduct had the clear capacity to lead to an unjust verdict by establishing a motive, while [also] . . . negating defendant's entire testimony that the shooting was an accident."

We agree with the PCR judge that trial counsel was not ineffective as she challenged these closing arguments. The judge correctly recognized trial counsel objected to the prosecutor's arguments regarding divorce, financial motive, defendant seeking money, infidelity, and the proximity of the parties when defendant shot her. Counsel waited until the prosecutor had concluded his summation because she did not want to interrupt him. The trial judge commented that it was the correct way to object but denied the objections after considering the parties' arguments.

Regarding the State's inference that Lynn was likely sleeping when she was shot, trial counsel did not object. Yet, this was not ineffective representation because as the PCR judge correctly reasoned the inference was

reasonably grounded in the State's evidence. See State v. Reddish, 181 N.J. 553, 641 (2004) (internal citation omitted) (holding closing remarks must be confined in scope to "evidence revealed during the trial and reasonable inferences to be drawn from that evidence"); see also State v. Echols, 199 N.J. 344, 359-60 (2009) (quoting State v. Williams, 113 N.J. 393, 447 (1988)) (recognizing prosecutors "are afforded considerable leeway in making opening statements and summations"). The medical examiner testified "[t]he lack of injury to the surface of [Lynn's] eye suggests that her eyes were closed at the time of the incident," and "she had fine white particulate matter over the right side of her face and her hair." This testimony, coupled with the fact that it was around 9:00 p.m. when the shooting occurred and Lynn was on the couch, substantiated the State's reasonable inference that she was "asleep" when she was shot. Counsel cannot be held ineffective for not objecting to closing remarks that would not have been sustained. See State v. Worlock, 117 N.J. 596, 625 (1990) ("The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel.").

IV

Defendant argues trial counsel was ineffective for not interviewing his son and daughter-in-law before they testified that he had financial difficulties and

marital discord. He points to counsel's certification attesting that she was "blindsided" by the two witnesses' testimony, which the State used to establish defendant's motive for killing Lynn. Defendant claims he was prejudiced by counsel's deficient investigation which affected the outcome of the trial. Defendant seeks an evidentiary hearing to question counsel why she chose not to interview his son and daughter-in-law.

We agree with the PCR judge that trial counsel was not ineffective. Trial counsel's certification that she was ill-equipped and surprised at trial regarding the son and daughter-in-law's testimony is belied by her arguments, nearly a month-and-a-half before trial, in support of her unsuccessful motion to suppress the admissibility of the witnesses' statements. Counsel recited the witnesses' statements to law enforcement and the theory they proffered to the State that defendant planned to murder Lynn. Thus, as the judge correctly determined, counsel was well-informed that the witnesses would testify that defendant's financial troubles and strained relationship with Lynn motivated defendant to kill her. The PCR judge's weighing of these factual conflicts is supported by the record.

Moreover, even if counsel was ineffective for not presenting testimony to refute his son and daughter-in-law's testimony, defendant did not present a

11

certification by a witness who could provide such testimony. Therefore, we cannot conclude that defendant was prejudiced by counsel's ineffectiveness.

V

Defendant asserts trial counsel was ineffective by not pursuing a plea deal when he was originally charged with reckless manslaughter. He relies upon trial counsel's certification stating she

> never negotiated a non-trial resolution with the prosecutor nor discussed a possible plea with [defendant] because I believed that the shooting was an accident, and the [S]tate could not prove an intent to kill or cause serious bodily injury. Neither did I contemplate a plea to reckless manslaughter . . . as I believed in [defendant's] claim of innocence.

Moreover, counsel affirmed, "[a]fter the fact, the prosecutor indicated that he would have agreed to allow [defendant] to plead to [] reckless manslaughter." Defendant contends counsel's "overconfidence of an acquittal prevented the [plea] offer from being presented for consideration," thus, he was unable to make an informed decision. Defendant argues he was prejudiced because if trial counsel had presented a plea offer to reckless manslaughter, a second-degree offense he would have accepted it as it would have reduced his sentence exposure to between ten to thirty years, as opposed to a sentence of thirty years without parole eligibility for the first-degree aggravated manslaughter offense.

12

He certified that "[a]lthough I did not shoot my wife on purpose, I would have pled to reckless manslaughter" since "I did cause her death[,] and it was reckless to aim a gun in her direction while I was cleaning it."

On this issue, we are constrained to part company with the PCR judge. We are mindful that "the decision whether to engage in such bargaining rests with the prosecutor" and a plea agreement operates as a contract, which "requires that both parties to the bargain voluntarily agree to its term" and come to a "meeting of the minds." State v. Williams, 277 N.J. Super. 40, 46 (App. Div. 1994). Nevertheless, "[a] defense counsel's duty to provide representation in the plea negotiation process thus plainly includes the duty to explore the possibility of resolving criminal charges through a plea agreement when directed to do so by a client, to keep the client informed of a plea offer, and to follow the client's instructions in accepting or rejecting the plea offer." Cortez v. Gindhart, 435 N.J. Super. 589, 602 (App. Div. 2014). More generally, lawyers are required to take "any steps necessary in the proper handling of the case," including but not limited to "a careful investigation of the facts of the matter, the formulation of a legal strategy, the filing of appropriate papers, and the maintenance of communication with the client." Ziegelheim v. Apollo, 128 N.J. 250, 260-61

(1992) (first quoting Passanante v. Yormark, 138 N.J. Super. 233, 239 (1975)), (then citing id. at 238-39). Further, we recently held

> a defendant has a right to have his counsel advocate on his behalf for the most favorable plea deal possible. Indeed, given the prevalence of negotiated guilty pleas—which account for the vast majority of convictions—it is axiomatic that the assistance of counsel during the plea negotiation process is no less important than assistance rendered during a jury trial.
>
> [State v. Wildgoose, 479 N.J. Super. 331, 350-51 (App. Div. 2024).]

It seems from trial counsel's certification that she never pursued plea negotiations based upon her one-dimensional view of the case — her client's perspective. It appears counsel did not exercise the reasonable conduct expected of lawyers and undermined her duty to "pursue the goals of the client," and undertake "a careful investigation of the facts of the matter [and] the formulation of a legal strategy." Ziegelheim, 128 N.J. at 261; see also Strickland, 466 U.S. at 700.

In not granting defendant an evidentiary hearing, the PCR judge stated:

> [Defendant] had to complete a [p]retrial [m]emorandum, with the assistance of counsel, and acknowledge review and understanding of its contents before the court. Every [p]retrial [m]emorandum includes a section directing the defendant to set forth in detail the plea agreement offered including sentencing recommendations. Clearly, a plea agreement was

14

extended, and [defendant] rejected that offer, on the record.

However, there is no credible evidence in the record memorializing or intimating that defendant freely and voluntarily rejected a plea offer to reckless manslaughter. And if a plea offer was extended, the PCR judge would have to evaluate when it was extended and what steps trial counsel took during defendant's initial charge that constituted sound trial strategy. An evidentiary hearing is necessary to address these issues to determine if counsel was ineffective with respect to plea negotiations, which prejudiced defendant.

The State's assertion that defendant maintained his innocence and, therefore, would be prohibited from perjuring himself by pleading guilty is unpersuasive. A reckless manslaughter factual predicate only requires:

> [(1)] "[the defendant] consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct;" and
>
> [(2)] "the victim's death . . . was within the scope of the risk contemplated by the defendant."
>
> [State v. Campfield, 213 N.J. 218, 232-34 (2013); see also N.J. Model Jury Charge (Criminal), 2C:11-4(b)(1).]

Defendant conceded that he acted in a reckless manner, as reflected by his statements to law enforcement that he turned off the gun's safety measure,

15

loaded a live round into the shotgun, which was aimed at the victim, and pulled the trigger. Based on the present record, a negotiated guilty plea by defendant to reckless manslaughter seems plausible.

We affirm in part and reverse and remand in part for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1335-23